IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

GREG JOHNSON,                          :
                                       :
           Plaintiff,                  :
                                       :        No. 1:15-cv-2254-JFS
      v.                               :
                                       :
DARRELL WIREMAN,                       :
MORRIS L. HOUSER,                      :        (Magistrate Judge Saporito)
JAMES ECKARD,                          :
ULRICH KLEMM,                          :
SHAWN KEPHART,                         :
TABB BICKELL, and                      :
DEPARTMENT OF CORRECTIONS,             :
                                       :
           Defendants.                 :

## SECOND AMENDED COMPLAINT

Greg Johnson brings this civil rights action, through counsel, for declarative, injunctive, and monetary relief for violations of religious rights guaranteed by the First Amendment of the U.S. Constitution, pursuant to 42 U.S.C. § 1983 ("Section 1983"), violations of the Religious Land Use and Institutionalized Persons Act of 2000, 42 U.S.C. §§ 2000cc - 2000cc-2 ("RLUIPA"), and violations of the Religious Freedom Restoration Act of 1993, 42 U.S.C. § 2000bb-1 ("RFRA").

## JURISDICTION

1.     This action arises under the federal statutes stated above, that is, RFRA, RLUIPA and Section 1983.  This Court has jurisdiction under 28 U.S.C. §§ 1331, 1343(a)(3) and (4).

2.      Venue is proper under 28 U.S.C. § 1391(b)(2) because events giving rise to this action occurred in Huntingdon County and Cumberland County, Pennsylvania, within the Middle District.

<u>PARTIES</u>

3.      Greg Johnson, the plaintiff, is an adult man who is incarcerated by the Commonwealth of Pennsylvania at the State Correctional Institution at Huntingdon ("SCI Huntingdon" or "the prison").

4.      Defendant Darrell Wireman was, at the times relevant to this action, a chaplain at SCI Huntingdon and Facility Chaplaincy Program Director at the prison.  He was an employee of the Pennsylvania Department of Corrections ("DOC") and acted under color of state law.  He is sued in his individual and official capacities.

5.      Defendant Morris Houser was, at the times relevant to this action, the Corrections Classification and Program Manager at SCI Huntingdon.  He was an employee of DOC and acted under color of state law.  He is sued in his individual and official capacities.

6.      Defendant James Eckard was, at the times relevant to this action, a Superintendent of SCI Huntingdon.  He was an employee of DOC and acted under color of state law.  He is sued in his individual and official capacities.

7.      Defendant Ulrich Klemm was, at the times relevant to this action, the

Administrator of Religion and Volunteer Services for DOC.  He was an employee of DOC and acted under color of state law.  He is sued in his individual and official capacities.

8.     Defendant Shawn Kephart was, at some times relevant to this action, the Director of the Bureau of Treatment Services for DOC.  He was an employee of DOC and acted under color of state law.  He is sued in his individual and official capacities.

9.     Defendant Tabb Bickell was, at the times relevant to this action, Superintendent of SCI Huntingdon and then DOC Deputy Secretary for the Central Region.  He was an employee of DOC and acted under color of state law.  He is sued in his individual and official capacities.

10.     Defendant Department of Corrections is an agency of the Commonwealth of Pennsylvania.  DOC receives federal funds.  DOC operates SCI Huntingdon.  DOC is sued under RFRA and RLUIPA directly and for wrongful actions undertaken on its behalf by its employees.

<u>FACTS COMMON TO ALL COUNTS</u>

11.     Mr. Johnson, the plaintiff, is a sincere and devout Muslim who follows the teachings of the Hon. Elijah Muhammad as he understands them.

12.     Mr. Johnson's religious practices include avoidance of certain religiously prohibited foods and observance of a fast each day during the month of

3

December between dawn and dark as those times are stated in a published religious timetable for his locale.

13.     Mr. Johnson wishes to avoid forbidden foods such as pork, corn, and soy products, but he cannot do so unless the menu items containing them are identified in the serving line in the prison dining hall.  Foods that are free of forbidden substances are called "halal" foods.

14.     Mr. Johnson wishes to observe the religious fast during December, but he cannot do so unless the prison relaxes its enforcement of its food-control regulations or makes some other provision for Johnson to have a meal after dark.

### Prison Control Of Food

15.     During December in Huntingdon, Pennsylvania, the times of dawn range between about 5:56 a.m. and 6:13 a.m., but breakfast in the prison dining hall is served no earlier than 6:30 a.m.  The times of dark range between about 6:06 p.m. and 6:16 p.m., but supper in the prison dining hall is served no later than 6 p.m.  Hence, in December, meals are never available in the prison dining hall at times when Johnson is able to consume them.

16.     Without some accommodation from prison staff, Johnson cannot sustain himself during the December fast by eating after dark.  He is forced to either give up his religious exercise or compromise his health.

17.     Prison regulations forbid Johnson to carry food out of the dining hall

to his cell for later consumption, unless fresh fruit is offered.  While fresh fruit is not served every day, when it is offered Johnson may take one serving back to his cell.  No other food may be taken from the dining hall.

18.     Prison regulations forbid Johnson to store snack items from the commissary in his cell in sufficient quantity to sustain him between commissary visits without supplementation by food from the dining hall.

19.     If Johnson violates the prison's food-control regulations, he is subject to disciplinary action.

20.     Johnson's religious beliefs further require him to obey all lawful authority during the holy season of the December fast.  He is religiously required to obey the prison's food-control regulations.

21.     There are other Muslim prisoners at SCI Huntingdon who wish to observe a similar fast but at a different season, that is, during the lunar month of Ramadan.

22.     Prisoners who wish to observe the Ramadan fast are accommodated by the prison.  They receive a bag breakfast to consume before dawn, and they have a special late seating in the dining hall for their supper.  This accommodation is granted even when Ramadan falls in summer, when the sun sets much later than it sets in December.

23.     Prisoners who wish to observe the Ramadan fast are provided by the

prison with the means to participate in the obligatory communal meal or "feast" and prayers that conclude the Ramadan fast.

## Coercion To Change Religious Practice

24.     Johnson submitted accommodation requests for his religious exercises in the summer of 2014 and again in the summer of 2015.  He requested accommodation of the fast for December 2014.  He then requested ongoing accommodation of a halal diet as well as accommodation of the fast for December 2015.

25.     DOC denied the 2014 request.

26.     Defendant Wireman refused to process the 2015 request.

27.     Wireman urged Johnson to substitute another religious exercise for the December fast that Johnson wished to observe.  Specifically, Wireman told Johnson to observe the Ramadan fast, which took place from about June 28 to July 28, 2014, and again from about June 17 to July 17, 2015.

28.     Defendant Houser, in a response to a grievance, sought to cause Johnson to switch his religious practice from the December fast to a Ramadan fast, in that Houser advised Johnson that his only option for an accommodated 30-day religious fast was to observe the Ramadan fast instead of Johnson's own exercise of the December fast.

29.     Defendant Eckard, in a response to a grievance appeal, sought to

cause Johnson to switch his religious practice from the December fast to a

Ramadan fast, in that Eckard advised Johnson to either fast during Ramadan or fast

on his own, but Eckard did not relax the prison food regulations to enable Johnson

to fast on his own.

30.     Defendant Klemm sought to promote the Ramadan fast by issuing

yearly directives providing accommodations to enable Muslim prisoners to fast

during Ramadan but at no other time.

31.     Klemm's 2014 directive caused the prison to substantially burden

Johnson's religious exercise of fasting by refusing to consider any accommodation

that would enable Johnson to fast in December 2014.

32.     On information and belief, Klemm issued a similar directive in 2015

that caused Defendant Wireman to refuse to process Johnson's 2015 religious

accommodation request at all and to continue to urge Johnson to switch to the

Ramadan fast.

33.     Defendant Kephart responded to Johnson's 2014 religious

accommodation request for the December fast by advising Johnson to observe the

Ramadan fast instead.  This response appears in a recommendation that Kephart

submitted to Defendant Bickell, stating, "The least restrictive means for the inmate

to fast for 30-days with an accommodation of supper after sunset and breakfast

before sunrise is to fast during Ramadan when the Department accommodates

fasting inmates who identify with the broad Muslim and Muslim-related faiths."

34.     Defendant Bickell personally advised Johnson to switch to Ramadan fasting while Bickell was Superintendent of SCI Huntingdon before mid 2014.

35.     Later in 2014, as Regional Deputy Secretary, Bickell endorsed Kephart's written recommendation that Johnson should switch to fasting in Ramadan and abandon his own religious practice of fasting in December.

36.     Because of this coercion, and because he had no other option, Johnson participated in the Ramadan fast in 2014, 2015, and 2016.  The lunar month of Ramadan approximately coincided with the solar month of June in 2106.  That is, Ramadan 2016 occurred about June 6 through July 6, 2016.

37.     Participating in the Ramadan fast at the prison was a significant burden and a hardship for Johnson, inasmuch as it forced him into contact with adherents of a different religious community who were hostile towards Johnson's beliefs and practices and who freely made disparaging remarks about the Hon. Elijah Muhammad and his followers, including Muhammad's Temple of Islam and the Nation of Islam, and did so in a religious context that was particularly distressing for Johnson.

38.     Johnson does not wish to observe the Ramadan fast, which is a practice that belongs to a different religion than Johnson's religion.

39.     The December fast has a distinctive rationale, set forth in the

teachings of the Hon. Elijah Muhammad, which Johnson follows.

40.     The December fast is time-bound.  It cannot be transferred to a different month, according to Johnson's sincerely held religious belief.  Nor can the times of fasting be shifted to start later than dawn or to stop earlier than dark, according to Johnson's belief.

**Substantial Burdens Imposed
On Religious Exercises**

41.     Defendants DOC, Bickell, and Eckard substantially burdened Johnson's religious exercise of the December fast by strictly enforcing the prison food-control regulations, thus rendering it impossible for Johnson to sustain himself for a month without eating in the prison dining hall during the daylight hours when he was religiously forbidden to eat or drink or violating the prison's food-control regulations by smuggling food out of the dining hall at the risk of incurring misconduct charges and punishment.

42.     The defendants did not consider any alternative means to accomplish the purposes of the prison food-control regulations that would have been less burdensome to Johnson's religious exercise of the December fast.  They did not consider relaxing the food-control regulations so as to allow Johnson to bring a dinner tray back to his cell to consume after dark.  They did not consider allowing Johnson to stockpile food in his cell to sustain himself.  They did not discuss any other alternatives with Johnson or allow him to make suggestions.

43.     Defendant Wireman refused to review and process Johnson's 2015 accommodation request, including the request for a halal diet and labeling of non-halal foods offered in the dining hall.  In this way, Wireman made certain that the substantial burdens on Johnson's practices of December fasting and of avoiding non-halal foods would continue through December 2015.

44.     Defendants DOC, Bickell, and Eckard substantially burdened Johnson's religious exercise of following a halal diet, in that they caused non-halal additives including soy and corn products to be added to some menu items served in the prison dining hall without labeling the menu items that contained the additives, thus rendering it impossible for Johnson to avoid consuming non-halal foods.

45.     Defendants not only caused imperceptible additives like soy curd, soy meal, corn meal, and corn syrup to be added to many items on the menu in the prison, without labeling them, but they also caused whole corn kernels and non-halal beans to be mixed with halal vegetables, with the result that Johnson had to either avoid most of the vegetables served or else extract the corn kernels, lima beans, and other legumes individually from the dishes that he was given before he consumed them.

46.     The time allotted for consumption of meals by the prison is about fifteen minutes, which is too short a time for Johnson to sift through the items

10

served on his meal tray to remove those that are religiously defiling for him.

47.     Sorting out non-halal food items further reduced the nutritional value of the meals that Johnson was able to consume, and no alternative sources of nutrition were available in the prison dining hall.

48.     Johnson's efforts to pick through his meal tray to sort out non-halal food items made the food less palatable, offended other prisoners who were seated near Johnson, and subjected Johnson to verbal abuse, ridicule, and gestures of annoyance from other prisoners seated at the table and from corrections officers standing nearby.

49.     This confronted Johnson with an intolerable choice, and he often felt forced to consume defiling foods rather than endure the hardships that inevitably came with sorting his meal tray.

50.     The defendants did not consider any alternative means to accomplish the purposes of the non-halal food additives and admixtures that would have been less burdensome to Johnson's religious exercise of observing the dietary rules set forth by the Hon. Elijah Muhammad.  They did not consider labeling the foods that contained soy, peanut, corn, or pork so that Johnson could avoid them.  They did not consider providing a halal protein source as an option in the menu.  They did not discuss any other alternatives with Johnson or allow him to make suggestions about a halal menu.

11

51.     Johnson had to purchase snack food through the prison commissary in an attempt supplement his diet.

52.     Johnson experienced repeated bouts of indigestion, abdominal pain, and disruptions of bowel function because of these dietary deficiencies, for which he sought medical assistance.

53.     Following medical advice, Johnson had to purchase over-the-counter medication through the prison commissary in order to relieve symptoms of the digestive distress that he experienced because of his inadequate diet.

### Hostility Toward Religion
### And Deliberate Indifference Toward Religious Rights

54.     Defendants Wireman, Houser, Klemm, and Kephart disparaged Johnson's religion as if it were a deviant form of Islam.  They disfavored Johnson's religious practices, and they sought to coerce Johnson to conform his religious practices to those of the form of Islam that they themselves favored. They expressed this disfavor and coercion orally and in several written communications with Johnson.  This disparagement and coercion had no rational relation to any legitimate correctional or other state interest.

55.     Defendants Wireman, Houser, Eckard, Klemm, Kephart, and Bickell personally favored, promoted, and sought to establish a form of Islam at the prison that is distinct and different from the Islam that Johnson practices.   They expressed this favoritism orally and in several written communications with

Johnson.  This favoritism had no rational relation to any legitimate correctional or other state interest.

56.     Defendants Wireman, Houser, Eckard, Klemm, Kephart, and Bickell interfered with Johnson's religious freedoms by preventing Johnson from practicing his own chosen religious exercises, including the December fast and dietary practices.  They inhibited Johnson's religious freedom by denying his oral and written requests for reasonable accommodations of his religious exercises throughout 2014, 2015, 2016, and into mid 2017.  This curtailment of Johnson's religious freedom had no rational relation to any legitimate correctional or other state interest.

57.     Defendant Wireman wrote to Johnson on August 24, 2015, and again advised Johnson to fast during Ramadan.  Wireman ignored or declined Johnson's repeated requests for an interview to discuss ways to fast during December and ways to avoid religiously prohibited foods.

58.     Wireman consistently urged Johnson to fast during Ramadan whenever Johnson broached the topic of the December fast.

59.     The defendants, on behalf of the prison, further sought to suppress Johnson's religious beliefs and practices by scheduling the prayer services of his community on Saturdays between 1:00 and 2:00 p.m., but then delaying the prison call-out for those services until 1:30 p.m. or else canceling the call-out altogether,

with the result that Mr. Johnson either could not attend the full hour of the prayer

services or, on some occasions, could not attend them at all.

### Conspiracy To Deprive Plaintiff
### Of Constitutional Rights

60.     Defendant Wireman personally acted to endorse DOC sponsorship of

the Ramadan fast, to persuade Johnson to adopt the Ramadan fast, and to oppose

accommodation of Johnson's own chosen religious exercises of the December fast

and a halal diet.  Wireman did so after consultations and correspondence with

defendants Houser, Eckard, Klemm, Kephart, and Bickell about the fast and the

diet that Johnson sought to observe.  Wireman agreed to further their agenda of

promoting the Ramadan fast and suppressing Johnson's religious exercises.

61.     Defendant Houser personally acted to endorse DOC sponsorship of

the Ramadan fast, to persuade Johnson to adopt the Ramadan fast, and to oppose

accommodation of Johnson's own chosen religious exercises of the December fast

and a halal diet.  Houser did so after consultations and correspondence with

defendants Wireman, Eckard, Klemm, Kephart, and Bickell about the fast and the

diet that Johnson sought to observe.  Houser agreed to further their agenda of

promoting the Ramadan fast and suppressing Johnson's religious exercises.

62.      Defendant Eckard personally acted to endorse DOC sponsorship of

the Ramadan fast, to persuade Johnson to adopt the Ramadan fast, and to oppose

accommodation of Johnson's own chosen religious exercises of the December fast

and a halal diet.  Eckard did so after consultations and correspondence with defendants Wireman, Houser, Klemm, Kephart, and Bickell about the fast and the diet that Johnson sought to observe.  Eckard agreed to further their agenda of promoting the Ramadan fast and suppressing Johnson's religious exercises.

63.     Defendant Klemm personally acted to endorse DOC sponsorship of the Ramadan fast.  Klemm was the architect and author of the DOC policy favoring the Ramadan fast and suppressing other Islamic practices.  Klemm disseminated that policy throughout DOC prisons and to the other defendants, who accepted and implemented it.

64.     Klemm also personally acted to persuade Johnson to adopt the Ramadan fast and to oppose accommodation of Johnson's own chosen religious exercises of the December fast and a halal diet.  Klemm did so after consultations and correspondence with defendants Wireman, Houser, Eckard, Kephart, and Bickell about the fast and the diet that Johnson sought to observe.  Klemm persuaded them to adopt his agenda of promoting the Ramadan fast and suppressing the religious exercises that Johnson wished to observe.

65.     Defendant Kephart personally acted to endorse DOC sponsorship of the Ramadan fast, to persuade Johnson to adopt the Ramadan fast, and to withhold accommodation of Johnson's own chosen religious exercises of the December fast and a halal diet.  Kephart did so after consultations and correspondence with

15

defendants Wireman, Houser, Eckard, Klemm, and Bickell about the fast and the
diet that Johnson sought to observe.  Kephart either instructed Klemm to publish
the DOC policy favoring the Ramadan fast or concurred with Klemm in publishing
that policy.  Kephart agreed to further the other defendants' agenda of promoting
the Ramadan fast and suppressing Johnson's religious exercises.  Kephart
embraced that agenda as his own.

66.     Defendant Bickell, first as Superintendent and later as Regional
Deputy Secretary, personally acted to endorse DOC sponsorship of the Ramadan
fast, to persuade Johnson to adopt the Ramadan fast, and to withhold
accommodation of Johnson's own chosen religious exercises of the December fast
and a halal diet.  Bickell did so after consultations and correspondence with
defendants Wireman, Houser, Eckard, Klemm, and Kephart about the fast and the
diet that Johnson sought to observe.  Bickell either instructed Kephart to enforce
the DOC policy favoring the Ramadan fast or concurred with Kephart in enforcing
that policy.  Bickell agreed to further the other defendants' agenda of promoting
the Ramadan fast and suppressing Johnson's religious exercises.  Bickell embraced
that agenda as his own.

67.     As Regional Deputy Secretary, Bickell was aware that the conspiracy
of the defendants violated Johnson's constitutional rights.  But Bickell enabled the
other defendants to succeed in their conspiracy to establish the Ramadan fast as the

only Islamic fast that could be observed in DOC prisons by prisoners like Johnson and to suppress the religious exercises of December fasting and following a halal diet that Johnson sought to observe.

68.     No legitimate correctional purpose or other state interest is advanced by the conspiracy of the defendants, through which they favor the Ramadan fast and seek to suppress the December fast and observance of halal dietary restrictions.

69.     The conspiracy arises from the defendants' shared indifference to the constitutional rights of prisoners like Johnson and from the defendants' personal hostility to the teachings of the Hon. Elijah Muhammad and hence to the Islamic practices and beliefs inspired by those teachings.

70.     The conspiracy persists among DOC employees because of their mistaken belief that riots occurring at DOC prisons many decades ago were caused by the teachings of the Hon. Elijah Muhammad and the actions of his followers. The defendants in this action are motivated to this day by hostility toward any prisoner who embraces the religious teachings and practices associated with the Hon. Elijah Muhammad.

71.     The defendants' deliberate indifference toward violations of Johnson's constitutional rights arises in part from their hostility toward the Hon. Elijah Muhammad and his religious teachings.

**Wrongful Exclusion From December Fast In 2016**

72.     In response to this litigation and to lawsuits filed by several other prisoners, Defendant Klemm issued a directive to all DOC prisons to partially accommodate the December fast in 2016.  Defendant Bickell was copied with Klemm's directive and approved of it.

73.     The directive instructed the prisons not to provide accommodations for the concluding feast and prayers at the end of the December fast.

74.     The directive instructed the prisons to exclude a prisoner from accommodations for December fast in 2016 if the prisoner had participated in Ramadan fast in 2016, that is, in June and July, 2016.

75.     Notice of DOC's intent to partially accommodate the December fast in 2016 was posted at the prison in the fall of 2016.

76.     When Johnson saw the directive, he contacted Defendant Wireman and asked to be included in the list of prisoners who would participate in December fast in 2016.

77.     Wireman interviewed Johnson, but Wireman denied Johnson's request to participate in December fast in 2016 because Johnson had already participated in Ramadan fast in June and July, 2016.

78.     Johnson asked Wireman to make an exception for him, inasmuch as Johnson had joined in the Ramadan fast in June-July 2016 before the prison posted

the announcement that December fast would be accommodated later in the same year.

79.    Wireman refused to make an exception for Johnson and list him as a participant in December fast 2016.

80.    Johnson also asked Wireman to contact the DOC central office, explain the circumstances, and request an exception, inasmuch as Johnson would not have fasted in Ramadan in 2016 but would have waited to fast in December if Johnson had been informed that December fast would be accommodated in 2016.

81.    Wireman refused to contact DOC central office with this reasonable request from Johnson.

82.    Wireman arbitrarily refused to contact administrators at the DOC central office, that is, Defendants Klemm and Bickell and Tracy Smith, who had succeeded Defendant Kephart.  Wireman refused to explain to the administrators that it was unfair to exclude Johnson from December fast in 2016 because Johnson had observed the 2016 Ramadan fast before the announcement of the 2016 December fast.  Wireman also refused to adjust the policy locally to enable Johnson to take part in the December fast in 2016.

83.    Defendants later stated, in a paper filed in this action, that it was an "error" to exclude Johnson, and he "should have been permitted" to participate.

84.    Johnson was arbitrarily denied accommodations that would have

enabled him to observe the December fast in 2016.

85.     Defendant Klemm personally drafted the directive for the December 2016 fast in a manner that excluded prisoners, including Johnson, who had already participated in the 2016 Ramadan fast before the directive issued.  Klemm acted with intent to reduce the number of participants in the 2016 December fast so as to create a record of low numbers of participants as a false indication of a low level of interest.  In this way, Klemm persisted in his interference with Johnson's statutory rights and in his deliberate indifference toward Johnson's constitutional rights.

86.     Defendant Bickell approved and promulgated Klemm's directive as to the 2016 December fast, knowing that it unfairly excluded prisoners from participation if they had already observed the 2016 Ramadan fast before the 2016 December fast was announced.  Bickell acted with intent to reduce the number of participants in the 2016 December fast so as to create a record of low numbers of participants as a false indication of a low level of interest.  In this way, Bickell persisted in his interference with Johnson's statutory rights and in his deliberate indifference toward Johnson's constitutional rights.

## Injuries Sustained By Plaintiff

87.     Mr. Johnson was prevented from observing an exercise that is central to his religion, the December fast, in 2016 and in previous years.

88.     Johnson has been forced to ingest food containing additives that are

religiously forbidden to him, on a regular basis in the prison dining hall.

89.    Johnson's health has been damaged by ingesting soy products and other additives that are not only religiously prohibited for him but also detrimental to health, and in particular, to the male urinary tract.

90.    Johnson has become sick and gagged or vomited on some occasions when he learned that he had unknowingly ingested lard, soy, peanut, or other foods that he regards as both harmful and religiously defiling.

91.    Johnson's health has been further damaged by poor nutrition on those occasions when he has attempted to observe the December fast by sustaining himself on an inadequate supply of unwholesome snack foods purchased in the prison commissary and stored in his cell.

92.    Johnson has incurred expenses to purchase supplemental food and over-the-counter medication through the prison commissary.

93.    Johnson has endured ridicule and harassment in the prison dining hall when he attempted to sort through the food on his tray in an attempt to remove items that are religiously defining for him.

94.    Johnson has suffered emotional distress because he cannot observe the December fast and the halal dietary practices, which he sincerely perceives to be religious obligations.

95.    Johnson suffers additional emotional distress upon seeing that

defendants disparage his religion but favor prisoners who follow a different religion by providing them with accommodations that enable them to fast during the lunar month of Ramadan.

96.     Johnson suffered acute disappointment and chagrin when he attempted to sign up for the 2016 December fast, but was arbitrarily refused because he had fasted during Ramadan in 2016 before DOC announced accommodations for the 2016 December fast.

97.     Johnson has suffered additional distress because defendants repeatedly attempted to coerce him to adopt a religious practice that he does not believe in, that is, the Ramadan fast.

<u>CAUSES OF ACTION</u>

**Count I:  Violations Of RLUIPA**
**(Defendant DOC)**

98.     Paragraphs 1 through 97 are incorporated here by reference.

99.     Defendants DOC and its employees placed a substantial burden on Plaintiff's religious exercise of the December fast by enforcing food-control regulations without first considering whether the purposes of those regulations could be accomplished by other means that would be less burdensome to the religious exercise.

100.   Defendants DOC and its employees placed a substantial burden on

Plaintiff's religious exercise of avoiding certain prohibited food additives by serving him foods containing the additives without labeling them, and they did so without first considering whether the purposes of those unlabeled additives could be accomplished by other means that would be less burdensome to the religious exercise.

101.   Because of these violations of RLUIPA, Plaintiff suffered injuries as described herein.

### Count II:  Violations Of RFRA
### (All Individual Defendants)[1]

102.   Paragraphs 1 through 97 are incorporated here by reference.

103.   Defendants placed a substantial burden on Plaintiff's religious exercise of the December fast by enforcing food-control regulations without first considering whether the purposes of those regulations could be accomplished by other means that would be less burdensome to the religious exercise.

104.   Defendants placed a substantial burden on Plaintiff's religious exercise of avoiding certain prohibited food additives by serving him foods containing the additives without labeling them, and they did so without first considering whether the purposes of those unlabeled additives could be

---

1.  The word "Individual" is inserted here to correct the proposed Second Amended Complaint.  (Doc. 25-1.)

accomplished by other means that would be less burdensome to the religious exercise.

105.   Because of these violations of RFRA, Plaintiff suffered injuries as described herein.

### Count III:  Section 1983 Violations Of Rights
### Guaranteed By The Establishment Clause
### (All Individual Defendants)

106.   Paragraphs 1 through 97 are incorporated here by reference.

107.   Defendants Wireman, Houser, Eckard, Klemm, Kephart, and Bickell, lacking any rational correctional purpose, and acting under color of state law and with deliberate indifference to rights guaranteed by the Establishment Clause of the First Amendment to the United States Constitution, each individually and together with others, wrongfully favored and promoted a religious practice, the Ramadan fast, with the improper intent and effect of encouraging one variety of Islam to flourish at the prison while suppressing the variety of Islam practiced by Plaintiff.

108.   Because of these violations of religious rights protected by the Establishment Clause, Plaintiff suffered injuries as described herein.

### Count IV:  Section 1983 Violations Of Rights
### Guaranteed By The Free Exercise Clause
### (All Individual Defendants)

109.   Paragraphs 1 through 97 are incorporated here by reference.

110.   Defendants Wireman, Houser, Eckard, Klemm, Kephart, and Bickell,

24

lacking any rational correctional purpose, and acting under color of state law and with deliberate indifference to rights guaranteed by the Free Exercise Clause of the First Amendment to the United States Constitution, each individually and together with others, hindered Plaintiff from observing a religious fast in December 2014, 2015, and 2016 and in previous Decembers by arbitrarily enforcing food-control regulations and by refusing to arrange the kind of accommodations for Plaintiff that they caused to be provided to other prisoners to enable them to observe a similar fast at a different season in those years.

111.   The same defendants in the same manner hindered Plaintiff from observing religious dietary restrictions by refusing to identify which foods in the prison dining hall contained additives that Plaintiff was religiously forbidden to consume and by causing defiling foods to be mixed into many menu items served to Plaintiff.

112.   Because of these violations of religious rights protected by the Free Exercise Clause, Plaintiff suffered injuries as described herein.

### Count V:  Section 1983 Conspiracy
### To Violate Rights Protected By The First Amendment
### (All Individual Defendats)

113.   Paragraphs 1 through 97 are incorporated here by reference.

114.   Defendants Wireman, Houser, Eckard, Klemm, Kephart, and Bickell, lacking any rational correctional purpose, and acting under color of state law,

conspired with one another to violate rights guaranteed to Plaintiff by the Establishment Clause and the Free Exercise Clause of the First Amendment to the United States Constitution.

115.   Because of these violations of religious rights protected by the First Amendment, Plaintiff suffered injuries as described herein.

<u>DEMAND FOR RELIEF</u>

WHEREFORE, Plaintiff requests that this Honorable Court:

A.   Award declaratory relief to Plaintiff by finding that the Defendants violated his constitutional and statutory rights in the manner described herein;

B.   Award injunctive relief to Plaintiff by enjoining DOC to provide accommodations to enable Plaintiff to observe the December fast henceforth while incarcerated by DOC;

C.   Award injunctive relief to Plaintiff by enjoining DOC to provide Plaintiff with a nutritious diet that complies with religious requirements and to label the additives in foods served in the prison dining hall;

D.   Award compensatory damages to Plaintiff against the Defendants;

E.   Award punitive damages to Plaintiff against the Defendants;

F.   Award the costs of this action to Plaintiff;

G.   Award reasonable attorney's fees to Plaintiff;

H.   Award reasonable interest on all monetary awards; and

I.   Award such other and further relief as this Court may deem appropriate.


Respectfully submitted,


**/s/ Marianne Sawicki**
MARIANNE SAWICKI
PA  313471
2530 South Blair Avenue
Huntingdon, PA 16652
Phone:      (814) 506-2636
MarianneSawicki@verizon.net

Attorney for Greg Johnson


Date:  June 24, 2017


CERTIFICATE OF SERVICE

I hereby certify, on this 24th day of June, 2017, that I caused the foregoing

Second Amended Complaint to be served on all counsel of record through the

notification utility of the ECF system of the Court.


**/s/Marianne Sawicki**
MARIANNE SAWICKI, Esq.


27