## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

GREG JOHNSON,

    Plaintiff,

    v.

DARRELL WIREMAN, et al.,

    Defendants.

CIVIL ACTION NO. 1:15-cv-02254

(SAPORITO, M.J.)

## <u>MEMORANDUM</u>

This is a prisoner civil rights action. It commenced on November 24, 2015, when the plaintiff, appearing through counsel, filed his original fee-paid complaint. (Doc. 1.) The case was assigned to us upon the consent of the parties, pursuant to 28 U.S.C. §636(c) and Rule 73 of the Federal Rules of Civil Procedure. (Doc. 24.)

The currently operative complaint is the plaintiff's second amended complaint, filed on June 24, 2017. (Doc. 28.) Following completion of discovery, the matter was set for a September 2018 trial. Shortly before the trial, the defendants filed a motion *in limine* concerning an affirmative defense, timely raised in their answer, asserting that the plaintiff, Greg Johnson, failed to exhaust his administrative remedies before bringing this action. (Doc. 54; *see also* Doc. 55.) The plaintiff filed

a brief in opposition to the defendants' motion. (Doc. 66.) We converted the trial into an evidentiary hearing on the issue of whether the plaintiff properly exhausted available administrative remedies prior to bringing suit. (Doc. 71.) That hearing was held on September 24, 2018, at which both sides presented witness testimony and documentary evidence on the matter of exhaustion.

## I.  BACKGROUND

At the time of filing, the plaintiff was a convicted state prisoner incarcerated at SCI Huntingdon, located in Huntingdon County, Pennsylvania, where he had been incarcerated since March 2011. Prior to that, he had been incarcerated briefly at SCI Camp Hill, located in Cumberland County, Pennsylvania, where he first arrived in November 2010 for in-processing into the state correctional system. Johnson remained incarcerated at SCI Huntingdon until his release upon completion of his maximum term of imprisonment sometime before March 13, 2018.

Johnson is a practicing Muslim who follows the teachings of Hon. Elijah Muhammad and the Nation of Islam. One of the religious practices observed by Johnson is daylight fast during the calendar month of

December. In this practice, the Nation of Islam differs from traditional Muslim groups, which fast during the lunar month of Ramadan, which fell during the calendar months of June and July in 2014, 2015, and 2016. This lawsuit arises out of prison officials' refusal to grant Johnson's religious accommodation requests with respect to the December fasts in 2014, 2015, and 2016.

According to the second amended complaint, prison dining hall schedules, prison regulations restricting the removal of food from the dining hall to an inmate's cell, and prison regulations forbidding an inmate from storing snack items from the commissary in an inmate's cell substantially burdened Johnson's ability to observe the December fast required by his religious beliefs. While traditional Muslims are accommodated by prison officials during the summertime observance of Ramadan—receiving a special bag breakfast to consume in their cells before dawn and enjoying a special late-evening seating in the dining hall for supper—adherents of the Nation of Islam faith were not similarly accommodated.

In 2014, Johnson requested that prison officials provide similar accommodation so he could observe the December fast. Prison officials

denied his request. The prison chaplain, defendant Wireman, told Johnson he would have to observe the traditional Ramadan fast during the summer months instead. Johnson received similar advice from other officials in response to an inmate grievance and administrative appeals.

In 2015, Johnson once again attempted to request accommodations so he could observe the December fast, but defendant Wireman refused to process his request. Wireman once again told Johnson he should instead observe the traditional Ramadan fast during the summer months instead.

In the fall of 2016, after Johnson had already participated in the summertime Ramadan fast, defendant Pennsylvania Department of Corrections ("DOC") issued a new directive instructing prison officials to provide accommodations to Nation of Islam adherents who wished to observe the December fast. But the directive further instructed that prisoners who had already participated in the summertime Ramadan fast should be excluded from the December fast accommodations. Johnson requested to participate in the December 2016 fast, but defendant Wireman denied his request because he had already participated in the Ramadan fast.

Based on this conduct by the defendants, Johnson asserts five separate causes of action in his second amended complaint: In Count I, Johnson claims that defendant DOC placed a substantial burden on his religious exercise, in violation of the Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA"), 42 U.S.C. § 2000cc *et seq.* In Count II, he claims that the individual defendants—Darrell Wireman, Morris L. Houser, James Eckard, Ulrich Klemm, Shawn Kephart, and Tabb Bickell—placed a substantial burden on his religious exercise, in violation of the Religious Freedom Restoration Act of 1993 ("RFRA"), 42 U.S.C. § 2000bb *et seq.* In Count III, he claims that the individual defendants were deliberately indifferent to his religious rights under the Establishment Clause of the First Amendment to the United States Constitution, made actionable under 42 U.S.C. § 1983. In Count IV, he claims that the individual defendants were deliberately indifferent to his religious rights under the Free Exercise Clause of the First Amendment, made actionable under § 1983. In Count V, he claims that the individual defendants conspired with one another to violate his civil rights under the First Amendment, made actionable under § 1983. For relief, the plaintiff seeks declaratory and injunctive relief, as well as

compensatory and punitive damages.

## II. LEGAL STANDARDS

### A. Rule 12(b)(1) Dismissal Standard[1]

The plaintiff bears the burden of establishing the existence of subject matter jurisdiction under Rule 12(b)(1). *See Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991). A defendant may challenge the existence of subject matter jurisdiction in one of two fashions: it may attack the complaint on its face or it may attack the existence of subject matter jurisdiction in fact, relying on evidence beyond the pleadings. *See Gould Elecs. Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000); *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977). Where a defendant attacks a complaint as deficient on its face, "the court must consider the allegations of the

---

[1] Although the defendants have not filed a Rule 12(b)(1) motion in this action, the Court is permitted to raise the issue of subject matter jurisdiction *sua sponte*. *See Liberty Mut. Ins. Co. v. Ward Trucking Corp.*, 48 F.3d 742, 750 (3d Cir. 1995) ("Federal courts have an ever-present obligation to satisfy themselves of their subject matter jurisdiction and to decide the issue *sua sponte* . . . ."); *Johnson v. United States*, Civil No. 1:CV-08-0816, 2009 WL 2762729, at *2 (M.D. Pa. Aug. 27, 2009). Based on the pleadings and matters of public record, we find it appropriate to consider *sua sponte* dismissal of the plaintiff's claims for declaratory and injunctive relief and for damages under RLUIPA for lack of jurisdiction.

complaint as true." *Mortensen*, 549 F.2d at 891. "In deciding a Rule 12(b)(1) facial attack, the court may only consider the allegations contained in the complaint and the exhibits attached to the complaint; matters of public record such as court records, letter decisions of government agencies and published reports of administrative bodies; and 'undisputably authentic' documents which the plaintiff has identified as a basis of his claims and which the defendant has attached as exhibits to his motion to dismiss." *Medici v. Pocono Mountain Sch. Dist.*, No. 09-CV-2344, 2010 WL 1006917, at *2 (M.D. Pa. Mar. 16, 2010). However, when a motion to dismiss attacks the existence of subject matter jurisdiction in fact, "no presumptive truthfulness attaches to plaintiff's allegations," and "the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Mortensen*, 549 F.2d at 891. This case falls into the latter category. *See Blanciak v. Allegheny Ludlum Corp.*, 77 F.3d 690, 693 n.2 (3d Cir. 1996) ("[T]he Eleventh Amendment is a jurisdictional bar which deprives federal courts of subject matter jurisdiction," and thus "may properly be considered . . . under Fed. R. Civ. P. 12(b)(1).") (citing *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98–100 (1984)); *Sourovelis v. City of Philadelphia*, 103 F. Supp.

3d 694, 700 (E.D. Pa. 2015) ("A challenge for mootness is properly brought by a Rule 12(b)(1) motion, and constitutes a factual attack on the jurisdictional facts; thus, the court may consider evidence outside the pleadings.").

## B. § 1915A(b) and § 1997e(c) Dismissal Standard

Under 28 U.S.C. § 1915A, the Court is obligated to screen a civil complaint in which a prisoner is seeking redress from a governmental entity or an officer or employee of a governmental entity. 28 U.S.C. § 1915A(a); *James v. Pa. Dep't of Corr.*, 230 Fed. App'x 195, 197 (3d Cir. 2007). The Court must dismiss the complaint if it is "frivolous" or "fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915A(b)(1).The Court has a similar obligation with respect to federal claims concerning prison conditions. *See* 42 U.S.C. § 1997e(c)(1). *See generally Banks*, 568 F. Supp. 2d at 587–89 (summarizing prisoner litigation screening procedures and standards).

An action is "frivolous where it lacks an arguable basis in either law or fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989); *see also Thomas v. Barker*, 371 F. Supp. 2d 636, 639 (M.D. Pa. 2005). To determine whether it is frivolous, a court must assess a complaint "from an objective

standpoint in order to determine whether the claim is based on an indisputably meritless legal theory or clearly baseless factual contention." *Deutsch v. United States*, 67 F.3d 1080, 1086 (3d Cir. 1995) (citing *Denton v. Hernandez*, 504 U.S. 25, 34 (1992)); *Thomas*, 371 F. Supp. 2d at 639. Factual allegations are "clearly baseless" if they are "fanciful," "fantastic," or "delusional." *See Denton*, 504 U.S. at 32–33. "[A] finding of factual frivolousness is appropriate when the facts alleged rise to the level of the irrational or the wholly incredible, whether or not there are judicially noticeable facts available to contradict them." *Id.* at 33. A district court is further permitted, in its sound discretion, to dismiss a claim "if it determines that the claim is of little or no weight, value, or importance, not worthy of serious consideration, or trivial." *Deutsch*, 67 F.3d at 1089.

The legal standard for dismissing a complaint for failure to state a claim under § 1915A(b)(1) or § 1997e(c) is the same as that for dismissing a complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. *Brodzki v. Tribune Co.*, 481 Fed. App'x 705, 706 (3d Cir. 2012) (per curiam); *Mitchell v. Dodrill*, 696 F. Supp. 2d 454, 471 (M.D. Pa. 2010); *Banks*, 568 F. Supp. 2d at 588. "Under Rule 12(b)(6), a motion to

dismiss may be granted only if, accepting all well-pleaded allegations in the complaint as true and viewing them in the light most favorable to the plaintiff, a court finds the plaintiff's claims lack facial plausibility." *Warren Gen. Hosp. v. Amgen Inc.*, 643 F.3d 77, 84 (3d Cir. 2011) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007)). In deciding the motion, the Court may consider the facts alleged on the face of the complaint, as well as "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). Although the Court must accept the fact allegations in the complaint as true, it is not compelled to accept "unsupported conclusions and unwarranted inferences, or a legal conclusion couched as a factual allegation." *Morrow v. Balaski*, 719 F.3d 160, 165 (3d Cir. 2013) (quoting *Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007)). Nor is it required to credit factual allegations contradicted by indisputably authentic documents on which the complaint relies or matters of public record of which we may take judicial notice. *In re Washington Mut. Inc.*, 741 Fed. App'x 88, 91 n.3 (3d Cir. Sept. 25, 2018); *Sourovelis v. City of Philadelphia*, 246 F. Supp. 3d 1058, 1075 (E.D. Pa. 2017); *Banks v. Cty. of Allegheny*, 568 F. Supp.

2d 579, 588–89 (W.D. Pa. 2008).

## C. Standard for a *Small* Hearing on Exhaustion

Under Third Circuit precedent, "exhaustion is a question of law to be determined by a judge, even if that determination requires the resolution of disputed facts." *Small v. Camden Cty.*, 728 F.3d 265, 269 (3d Cir. 2013) (citing *Drippe v. Tobelinski*, 604 F.3d 778, 781 (3d Cir. 2010)); *see also Drippe*, 604 F.3d at 781 ("Juries decide cases, not issues of judicial traffic control. Until the issue of exhaustion is resolved, the court cannot know whether it is to decide the case or the prison authorities are to.") (quoting *Pavey v. Conley*, 544 F.3d 739, 741 (7th Cir. 2008)); *cf. Wilkerson v. United States*, Civil Action No. 3:13-1499, 2014 WL 1653249, at *9 (M.D. Pa. Apr. 24, 2014) ("[I]f there is a dispute of material fact, the court should conduct a plenary trial on the contested facts prior to making [an exhaustion of administrative remedies] determination.") (addressing a prisoner's FTCA claim). "Although the availability of administrative remedies to a prisoner is a question of law, it necessarily involves a factual inquiry." *Small*, 728 F.3d at 271 (citations omitted).

## III. DISCUSSION

As a preliminary matter, we will consider whether Johnson's claims for declaratory and injunctive relief should be dismissed as moot. We will also consider whether Johnson's RLUIPA claim against the DOC should be dismissed for lack of subject matter jurisdiction, and whether Johnson's RFRA claims against the individual defendants and his § 1983 claims against defendants Houser and Eckard should be dismissed for failure to state a claim upon which relief can be granted. We will then turn to the issue presented by the defendants' motion—whether the defendants are entitled to judgment on the plaintiff's remaining § 1983 claims because he failed to exhaust available administrative remedies.

### A. Declaratory and Injunctive Relief

In his complaint, the plaintiff seeks a judicial declaration "that the Defendants violated his constitutional and statutory rights."[2] (Doc. 28, at 26.) Johnson also seeks an order enjoining the DOC "to provide

---

[2] We note also that what he has requested is not "declaratory relief in the true legal sense." *Corliss v. O'Brien*, 200 Fed. App'x 80, 84 (3d Cir. 2006); *see also* 28 U.S.C. § 2201; Fed. R. Civ. P. 57. "Declaratory judgment is inappropriate solely to adjudicate past conduct. Nor is declaratory judgment meant simply to proclaim that one party is liable to another." *Corliss*, 200 Fed. App'x at 84.

accommodations to enable Plaintiff to observe the December fast henceforth while incarcerated by DOC" and "to provide Plaintiff with a nutritious diet that complies with [his] religious requirements and to label the additives in foods served in the prison dining hall." (*Id.*)

"[A] federal court has neither the power to render advisory opinions nor to decide questions that cannot affect the rights of litigants in the case before them." *Sutton v. Rasheed*, 323 F.3d 236, 248 (3d Cir. 2003) (quoting *Preiser v. Newkirk*, 422 U.S. 395, 401 (1975)); *see also Abdul-Akbar v. Watson*, 4 F.3d 195, 206 (3d Cir. 1993). As we noted above, Johnson was released from prison after he filed this lawsuit, rendering his claims for prospective injunctive or declaratory relief moot. *See Cobb v. Yost*, 342 Fed. App'x 858, 859 (3d Cir. 2009) (per curiam); *Ilarraza v. Chuta*, Civil Action No. 1:15-cv-2406, 2017 WL 1246363, at *3 (M.D. Pa. Feb. 10, 2017), *report and recommendation adopted by* 2017 WL 1208347 (M.D. Pa. Apr. 3, 2017). Johnson's claims for damages, however, are not mooted by his release. *See Sutton*, 323 F.3d at 249; *Allah v. Seiverling*, 229 F.3d 220, 222 n.2 (3d Cir. 2000); *Weaver v. Wilcox*, 650 F.2d 22, 27 n.13 (3d Cir. 1981).

Accordingly, we will *sua sponte* dismiss the plaintiff's claims for

declaratory and injunctive relief as moot, pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure.

### B. RLUIPA Claim Against the DOC

In Count I of the second amended complaint, the plaintiff asserts a claim against the DOC under RLUIPA. Because his claims for declaratory and injunctive relief are mooted by his release from prison, all that is left is a claim against the DOC for damages under RLUIPA.[3]

Absent abrogation by Congress or waiver by the state, the Eleventh Amendment to the United States Constitution provides that states, and their constituent agencies or departments, are immune from suit in federal court. *Pennhurst State. Sch. & Hosp. v. Halderman*, 465 U.S. 89, 101–02 (1984). The Pennsylvania Department of Corrections is one such state agency entitled to Eleventh Amendment immunity from suit. *Lavia v. Pa. Dep't of Corrs.*, 224 F.3d 190, 195 (3d Cir. 2000); *Hollihan v. Pa. Dep't of Corrs.*, 159 F. Supp. 3d 502, 510 (M.D. Pa. 2016). Moreover, the Commonwealth of Pennsylvania has expressly declined to waive its

---

[3] We note that Count I is asserted against the DOC only, and not the individual defendants. RLUIPA does not support claims for damages against state officials in their personal capacities. *See Sharp v. Johnson*, 669 F.3d 144, 154 (3d Cir. 2012); *see also Marshall v. Pa. Dep't of Corr.*, 690 Fed. App'x 91, 92 (3d Cir. 2017) (per curiam).

sovereign immunity in federal court. *See* 42 Pa. Cons. Stat. Ann. § 8521(b); *Lavia*, 224 F.3d at 195; *Hollihan*, 159 F. Supp. 3d at 510. Nor did Congress abrogate Eleventh Amendment immunity for the states in enacting RLUIPA. *See Sossamon v. Texas*, 563 U.S. 277, 285–88 (2011).

Accordingly, we will *sua sponte* dismiss the plaintiff's claim against the DOC for damages under RLUIPA for lack of subject matter jurisdiction, pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure.

### C. RFRA Claim Against the Individual Defendants

In Count II of the second amended complaint, the plaintiff asserts a claim against the individual defendants under RFRA. Because his claims for declaratory and injunctive relief are mooted by his release from prison, all that is left is a claim against the individual defendants for damages under RFRA.

But in *City of Boerne v. Flores*, 521 U.S. 507 (1997), the Supreme Court of the United States struck down RFRA as applied to state and local governments,[4] holding that it "exceeded the scope of Congress'

---

[4] "RFRA continues to be enforced against the federal government." *Combs v. Homer-Ctr. Sch. Dist.*, 540 F.3d 231, 261 n.46 (3d Cir. 2008) (Scirica, C.J., concurring) (per curiam) (citing *Gonzales v. O Centro*

enforcement power under section 5 of the Fourteenth Amendment." *Combs v. Homer-Ctr. Sch. Dist.*, 540 F.3d 231, 261 (3d Cir. 2008) (Scirica, C.J., concurring) (per curiam); *see also Sutton*, 323 F.3d at 244 n.12 ("[A]s applied to the states and hence to state officials, RFRA exceeds congressional power) (citing *City of Boerne*). Moreover, RFRA applies only in cases where the "government" itself is the defendant; it does not support claims for damages against government officials in their personal capacities. *See Mathis v. Christian Heating & Air Conditioning, Inc.*, 158 F. Supp. 3d 317, 326–27 & n.6 (E.D. Pa. 2016); *see also Jean-Pierre v. Bureau of Prisons*, Civil Action No. 09-266, 2010 WL 3852338, at *6 n.4 (W.D. Pa. July 30, 2010) ("[N]either RFRA nor RLUIPA support damage claims against government officials in their individual capacity.") (collecting cases).

Accordingly, we will *sua sponte* dismiss the plaintiff's claim against the individual defendants for damages under RFRA for failure to state a claim upon which relief can be granted, pursuant to 28 U.S.C. § 1915A(b)(1) and 42 U.S.C. § 1997e(c)(1).[5]

---

*Espirita Beneficente Uniao do Vegetal*, 546 U.S. 418 (2006)).

[5] *See generally* 42 U.S.C. § 1997e(c)(2) ("In the event that a claim is, on its face, frivolous, malicious, fails to state a claim upon which relief

## D. Personal Involvement of Defendants Houser and Eckard

In Counts III, IV, and V of the second amended complaint, the plaintiff asserts § 1983 civil rights claims against the six individual defendants. Two of these defendants, however—Houser and Eckard—should be dismissed for failure to state a claim, based on the plaintiff's failure to adequately plead their personal involvement in the allegedly unconstitutional conduct described in the second amended complaint.

In Counts III, IV, and V, the plaintiff has asserted federal civil rights claims against the individual defendants under 42 U.S.C. § 1983. Section 1983 provides a private cause of action with respect to the violation of federal constitutional rights. The statute provides in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or any other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

---

can be granted, or seeks monetary relief from a defendant who is immune from such relief, the court may dismiss the underlying claim without first requiring the exhaustion of administrative remedies.").

42 U.S.C. § 1983. Section 1983 does not create substantive rights, but instead provides remedies for rights established elsewhere. *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 816 (1985). To establish a § 1983 claim, a plaintiff must establish that the defendant, acting under color of state law, deprived the plaintiff of a right secured by the United States Constitution. *Mark v. Borough of Hatboro*, 51 F.3d 1137, 1141 (3d Cir. 1995). To avoid dismissal for failure to state a claim, a civil rights complaint must state the conduct, time, place, and persons responsible for the alleged civil rights violations. *Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005).

In this case, the plaintiff seeks to recover an award of damages against the superintendent of the facility where he was incarcerated and a grievance officer assigned to investigate and respond to his inmate grievances concerning the denial of his 2014 request for religious accommodation. But it is well established that "[c]ivil rights claims cannot be premised on a theory of *respondeat superior*. Rather, each named defendant must be shown . . . to have been personally involved in the events or occurrences which underlie a claim." *Millbrook v. United States*, 8 F. Supp. 3d 601, 613 (M.D. Pa. 2014) (citation omitted). As

previously explained by the Third Circuit:

> A defendant in a civil rights action must have personal involvement in the alleged wrongs . . . . [P]ersonal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence. Allegations of participation or actual knowledge and acquiescence, however, must be made with appropriate particularity.

*Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988).

Defendant Houser was the grievance officer assigned to investigate both of Johnson's 2014 inmate grievances concerning prison officials' refusal to provide him with a religious accommodation so he could participate in the December fast. Houser investigated and denied both grievances. Defendant Eckard was the superintendent of SCI Huntingdon. He reviewed and upheld Houser's grievance responses. Johnson alleges no facts to suggest any other role played by either of these two defendants, and it is well settled that if a prison official's only involvement is investigating or ruling on an inmate's grievance after the incident giving rise to the grievance has occurred, there is no personal involvement on the part of that official. *See Rode*, 845 F.2d at 1208; *see also Brooks v. Beard*, 167 Fed. App'x 923, 925 (3d Cir. 2006) (per curiam) (characterizing such a claim as legally frivolous). "[T]he mere fact that

an official receives and reviews a letter or grievance appeal is insufficient to establish personal involvement (*i.e.*, failure to respond or react does not establish that the official endorsed or acquiesced in the conduct at issue)." *Hennis v. Varner*, Civil Action No. 12-646, 2014 WL 1317556, at *9 (W.D. Pa. Mar. 31, 2014).

Accordingly, we will *sua sponte* dismiss the § 1983 claims against defendants Houser and Eckard as legally frivolous and for failure to state a claim upon which relief can be granted, pursuant to 28 U.S.C. § 1915A(b)(1) and 42 U.S.C. § 1997e(c).[6]

**E. Leave to Amend**

The Third Circuit has instructed that if a civil rights complaint is vulnerable to dismissal for failure to state a claim, the district court must permit a curative amendment, unless an amendment would be inequitable or futile. *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002). This instruction applies equally to *pro se* plaintiffs and those represented by counsel. *Alston v. Parker*, 363 F.3d 229, 235 (3d Cir. 2004). Here, it is clear that amendment would be futile with respect to the plaintiff's RFRA claim against the individual defendants and his

_____

[6] *See supra* note 5.

legally frivolous § 1983 claims against defendants Houser and Eckard. Therefore, these claims will be dismissed *without* leave to amend.

## F. Exhaustion of Available Administrative Remedies

What remains of the plaintiff's claims are his § 1983 claims for damages against defendants Wireman, Klemm, Kephart, and Bickell. In Counts III, IV, and V of the second amended complaint, the plaintiff claims that these remaining defendants conspired together to violate his rights under the Establishment and Free Exercise Clauses of the First Amendment. In particular, his claims are based upon the denial of his requests for a religious accommodation to permit him to observe the December fast in 2014, 2015, and 2016.

The defendants have interposed an affirmative defense, asserting that Johnson failed to properly exhaust administrative remedies before bringing this lawsuit. In particular, they contend that Johnson submitted three written grievances in 2014 and 2015, but he failed to properly complete the grievance appeal process with respect to two of those three grievances, and he failed to identify three of the four defendants by name in his one fully exhausted grievance. They further contend that Johnson failed to submit any grievance at all regarding the 2016 December fast.

In response, the plaintiff has argued that administrative remedies were effectively unavailable to him. He argues that the 2011 DOC policy change adding the requirement to name all individuals directly involved in conduct underlying a grievance was not properly circulated and made known to him. He further argues that the denial of his second 2014 grievance and the rejection of his 2015 grievance excused him from completing the administrative appeals process in 2015 or from filing any grievance at all in 2016.

On September 24, 2018, we conducted an evidentiary hearing on the threshold issue of exhaustion, pursuant to *Small v. Camden County*, 728 F.3d 265 (3d Cir. 2013), at which testimony and documentary exhibits were received into evidence. (*See* Doc. 79 (minute sheet); Doc. 80 (witness list); Doc. 81 (exhibit list); Doc. 92 (hearing transcript).) Prior to the hearing, the issue of exhaustion was raised by the defendants by motion, filed together with a supporting brief and documentary exhibits. (Doc. 54; Doc. 55.) The plaintiff had an opportunity to respond, filing a brief in opposition to the defendants' motion, together with documentary exhibits. (Doc. 66.) We also entered an order explicitly advising the parties that a scheduled bench trial had been converted into an

evidentiary hearing on the issue of exhaustion of administrative remedies. (Doc. 71.) Accordingly, we find that the mandate of *Paladino v. Newsome*, 885 F.3d 203 (3d Cir. 2018), has been satisfied. *See id.* at 211 (holding that "some form of notice to the parties and an opportunity to respond are needed before a district court elects to resolve factual disputes regarding exhaustion under *Small*").

### 1. Evidence Received into the Record

#### a. Testimony of Constance Green

The defendants presented the testimony of non-party witness Constance Green, the superintendent's assistant and facility grievance coordinator at SCI Huntingdon. Green provided testimony about distribution of the DOC's inmate handbook and SCI Huntingdon's facility-specific handbook supplement, about the DOC inmate grievance policy and procedures in general, about the distribution of updated copies of these materials when they are changed by the DOC, and about particular business records generated in connection with grievance proceedings concerning Johnson's requests for religious accommodation so he could participate in the December fast. In particular, Green testified that it was standard practice, and express DOC policy, for all

inmates to receive a copy of the DOC's *Inmate Handbook* as part of their inmate intake orientation at SCI Camp Hill, and that an inmate is expected to maintain that copy of the handbook as he moves from institution to institution. She testified that, when the handbook is updated, a new copy is provided to the inmate, and that the inmate also receives a facility-specific handbook supplement at each institution to which he is assigned. She testified about the inmate grievance procedures set forth in DC-ADM 804 and the general availability of an up-to-date copy of the policy in each housing unit and the facility library. Based on the demeanor of the witness and the consistency of her testimony with the record as a whole, we find Green's testimony to be fully credible.

### b. *Testimony of Jonathan Dudley (a/k/a Greg Johnson)*

Through his counsel, the plaintiff presented his own testimony in support of his position. Johnson testified he first arrived at SCI Huntingdon in March 2011. Prior to that, he was incarcerated for a short time at SCI Camp Hill. Johnson testified he had previously received a copy of the inmate handbook when he arrived at SCI Camp Hill on November 4, 2010. He testified that he brought his inmate handbook with him from SCI Camp Hill to SCI Huntingdon, and he acknowledged that

he was aware that the handbook was of secondary authority to the grievance policy itself, DC-ADM 804. Johnson testified that he did not recall receiving a memorandum regarding revisions to the grievance policy in 2011, which would have included the addition of a requirement to name all persons directly involved in an incident underlying a grievance. He testified that block workers—who were also inmates— would sometimes throw materials in the trash rather than distribute them to all inmates. He also testified as to the authenticity of the various grievance papers submitted into evidence, acknowledging that his later, typewritten grievances were actually written by counsel of record for his signature and submission to prison officials. Based on the demeanor of the witness and the inconsistency of his testimony with the record as a whole, we find Johnson's testimony to be less than fully credible.

c. *Exhibits Received into Evidence*

1.    Defense Exhibit 1: DOC Policy DC-ADM 804 "Inmate Grievance System" issued March 31, 2014, and effective May 1, 2014.

2.    Defense Exhibit 2: Multiple documents—(a) Memorandum from John E. Wetzel, Secretary of Corrections, to "All Inmates," dated March 31, 2014, regarding "Re-issue of Department Policy DC-ADM 804,

'Inmate Grievance System'"; (b) Email from Pauline Streightiff to Tabb Bickell and Constance Green, dated April 3, 2014, regarding "Inmate Memorandums"; (c) Inmate Memo for Distribution—Policy Changes: DC-ADM 804 Inmate Grievance System, dated April 2, 2014; (d) Inmate Notification of Rule Change, dated April 2, 2014—one page each for each of several housing units.

3.      Defense Exhibit 3: DOC Policy DC-ADM 804 "Inmate Grievance System" issued April 27, 2015, and effective May 1, 2015.

4.      Defense Exhibit 4: Pennsylvania Department of Corrections, *Inmate Handbook, 2013 Edition*.

5.      Defense Exhibit 5: Multiple documents—(a) Receipt of Facility Inmate Handbook Supplement, signed by the plaintiff and dated February 16, 2017; (b) Receipt of Inmate Handbook & Administrative Directives, signed by the plaintiff and dated November 5, 2010; (c) Receipt of Department of Corrections Inmate Handbook, signed by the plaintiff and dated May 6, 2017.

6.      Defense Exhibit 6: Multiple documents—(a) Official Inmate Grievance #523688, dated August 18, 2014; (b) Grievance Rejection #523688, dated August 20, 2014; (c) Official Inmate Grievance #523688,

dated August 29, 2014; (d) Grievance Rejection #523688, dated September 3, 2014; (e) Inmate's Request to Staff Member, dated September 7, 2014; (f) Grievance Rejection #523688, dated September 11, 2014; (g) Facility Manager's Appeal Response #523688, dated October 8, 2014; (h) Initial Review Response #523688, dated October 14, 2014; (i) Inmate Appeal to Facility Manager #523688, dated December 1, 2014;[7] (j) Facility Manager's Appeal Response #623688, dated November 17, 2014; (k) Inmate Appeal to Final Review #523688, dated December 1, 2014; (*l*) SOIGA Action Required Notice, dated December 18, 2014; (m) Inmate Appeal to Final Review—Addendum #523688, undated; (n) SOIGA Final Appeal Decision, dated January 21, 2015.

7. Defense Exhibit 7: Multiple documents—(a) Official Inmate Grievance #543097, dated December 16, 2014; (b) Religious Accommodation Request Response (attachment to Grievance #543097), dated December 2, 2014; (c) Initial Review Response #543097, dated December 24, 2014; (d) Inmate Appeal to Facility Manager #543097, dated February 21, 2015;[8] (e) Facility Manager's Appeal Response

---

[7] This document appears to be misdated. The precise date is immaterial.

[8] This document appears to be misdated. The precise date is

#543097, dated January 29, 2015; (f) Inmate Appeal to Final Review #543097, dated February 21, 2015; (g) SOIGA Grievance Referral (Notice to Inmate), dated March 18, 2015; (h) SOIGA Grievance Referral (Request to Bureau/Office), dated March 18, 2015; (i) Email from Ulrich Klemm to Dorina Varner, dated March 23, 2015, regarding "Grievance Referral 543097"; (j) SOIGA Final Appeal Decision #543097, dated April 1, 2015.

8.     Defense Exhibit 8: Multiple documents—(a) Official Inmate Grievance #586036, dated September 2, 2015; (b) Grievance Rejection #586036, dated September 9, 2015.

9.     Defense Exhibit 9: Multiple documents—(a) Email from Melissa Roberts to distribution list, dated December 12, 2011, regarding "DC-ADM 804 Inmate Grievance System Section 1 Grievances & Initial Review"; (b) Memorandum from John E. Wetzel, Secretary of Corrections, to "All Inmates," dated December 12, 2011, regarding "Reissue of Department Policy DC-ADM 804, 'Inmate Grievance System,' Section 1— Grievances & Initial Review."

10.     Plaintiff's     Exhibit     4:     Pennsylvania     Department     of

---

immaterial.

Corrections, *Inmate Handbook, 2008–2009 Edition*.

11.    Plaintiff's Exhibit 12: DOC Policy DC-ADM 804 "Inmate Grievance System" issued December 1, 2010, and effective December 8, 2010.

### 2. Analysis

Before bringing a § 1983 action concerning prison conditions, a prisoner must first exhaust all available administrative remedies. 42 U.S.C. § 1997e(a) ("No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility  until such administrative remedies as are available are exhausted."); *see also Booth v. Churner*, 532 U.S. 731, 741 n.6 (2001) ("[A]n inmate must exhaust irrespective of the forms of relief sought and offered through administrative avenues."). "[I]t is beyond the power of this court . . . to excuse compliance with the exhaustion requirement, whether on the ground of futility, inadequacy or any other basis." *Nyhuis v. Reno*, 204 F.3d 65, 73 (3d Cir. 2000).

Moreover,    § 1997e(a)    requires    "proper"    exhaustion    of administrative remedies, meaning strict compliance with DOC deadlines

and other procedural rules. *Woodford v. Ngo*, 548 U.S. 81, 89–95 (2006). "A procedural default by the prisoner, either through late or improper filings, bars the prisoner from bringing a claim in federal court unless equitable considerations warrant review of the claim." *McKinney v. Kelchner*, No. 1:CV-05-0205, 2007 WL 2852373, at *3 (M.D. Pa. Sept. 27, 2007) (citing *Spruill v. Gillis*, 372 F.3d 218, 227–32 (3d Cir. 2004)). "[T]o properly exhaust administrative remedies prisoners must 'complete the administrative review process in accordance with the applicable procedural rules'—rules that are defined not by [§ 1997e(a)], but by the prison grievance process itself." *Jones v. Bock*, 549 U.S. 199, 218 (2007) (quoting *Woodford*, 548 U.S. at 88) (citation omitted); *see also Strong v. David*, 297 F.3d 646, 649 (7th Cir. 2002) ("Section 1997e(a) does not delineate the procedures prisoners must follow."). "The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not [§ 1997e(a)], that define the boundaries of proper exhaustion." *Jones*, 549 U.S. at 218. "The only constraint is that no prison system may establish a requirement inconsistent with the federal policy underlying § 1983 and § 1997e(a)." *Strong*, 297 F.3d at 649. Thus, it

follows that "grievances must contain the sort of information that the administrative system requires." *Strong*, 297 F.3d at 649. But,

> if prison regulations do not prescribe any particular content for inmate grievances, "a grievance suffices if it alerts the prison to the nature of the wrong for which redress is sought. . . . [T]he grievant need not lay out the facts, articulate legal theories, or demand particular relief. All the grievance need do is object intelligibly to some asserted shortcoming."

*Johnson v. Testman*, 380 F.3d 691, 697 (2d Cir. 2004) (quoting *Strong*, 297 F.3d at 650).

In adopting DC-ADM 804, the DOC has established a multi-stage administrative remedy process through which an inmate may seek formal review of "problems or other issues arising during the course of their confinement." (Defs.' Ex. 1, at 1 (DC-ADM 804 Policy Statement (Mar. 31, 2014)); Defs.' Ex. 3, at 1 (DC-ADM 804 Policy Statement (Apr. 27, 2015)); Pl.'s Ex. 12, at 1 (DC-ADM Policy Statement (Dec. 1, 2010).) As we have previously summarized it, "DC-ADM 804 provides a three-tiered grievance process: (1) an initial review by a grievance officer; (2) an appeal to the facility superintendent; and (3) an appeal to the statewide chief grievance officer." *Adams v. Giroux*, CIVIL ACTION NO. 1:15-cv-01321, 2016 WL 8229205, at *6 (M.D. Pa. Dec. 15, 2016). In its

most recent incarnations, DC-ADM 804 sets forth various substantive and procedural requirements for inmate grievances, including requirements that the initial grievance "shall identify individuals directly involved in the event(s)," that it "shall specifically state any claims . . . concerning violations of [DOC] directives, regulations, court orders, or other law," and that it "must" specifically request any "compensation or other legal relief normally available from a court." (Defs.' Ex. 1, at 1-2 (DC-ADM 804 Procedures Manual § 1.A.12 (Mar. 31, 2014)); Defs.' Ex. 3, at 1-2 to -3 (DC-ADM 804 Procedures Manual § 1.A.12 (Apr. 27, 2015)).) In the earlier version of the policy submitted into evidence by the plaintiff, DC-ADM 804 did not include a requirement that the initial grievance identify individuals directly involved in the event grieved, but it did provide that the initial grievance "will . . . specifically state any claims . . . concerning violations of [DOC] directives, regulations, court orders, or other law," and that it "should" specifically request any "compensation or other legal relief normally available from a court." (Pl.'s Ex. 12, at 1-2 (DC-ADM 804 Procedures Manual § 1.A.11 (Dec. 1, 2010).)[9]

---

[9] Although this exhibit submitted by the plaintiff states on its front

Here, the plaintiff seeks an award of damages from the four remaining defendants, claiming that they violated his First Amendment establishment and free exercise rights when they denied his request for a religious accommodation to permit him to observe the December fast practiced by his Nation of Islam faith in 2014, 2015, and 2016. The defendants contend that the plaintiff failed to properly exhaust available administrative remedies with respect to all three years. The plaintiff has argued in rebuttal that administrative remedies were effectively unavailable to him because he did not receive adequate notice of the requirement, newly added in 2011, that his initial grievance "identify individuals directly involved in the event(s)" underlying his grievances. The plaintiff has further argued that he should be excused from exhausting administrative remedies with respect to the December 2016 fast because the rejection of his 2015 grievance made it clear that relief would not be forthcoming. We will consider his claims for each year's fast

_____

page that it was issued on December 1, 2010, the particular page upon which this provision is found states in its footer that it was issued on September 13, 2011. The specific date of issuance is immaterial here. The parties have stipulated that the policy change at issue—adopting a requirement that an inmate grievance must identify individuals directly involved in the underlying event—was adopted in 2011. (Doc. 92, at 45–46).

*seriatim.*

### a. The 2014 Religious Accommodation Request

By way of background, we note that defendant Klemm, the DOC's Administrator of Religion and Volunteer Services, is alleged to have issued a directive providing religious accommodations to traditional Muslim prisoners who wished to participate in the 2014 Ramadan fast, but refused to consider a similar directive concerning Nation of Islam prisoners who wished to observe the 2014 December fast. (Doc. 28 ¶¶ 30–31.) On August 18, 2014, Johnson submitted a written "Religious Accommodation Request Form – Non-Grooming," requesting an accommodation to allow him to observe the December fast observed by his religious denomination, the Nation of Islam. (Doc. 55-2, at 20.) On August 20, 2014, defendant Wireman, the Facility Chaplaincy Program Director at SCI Huntingdon, signed the form to acknowledge its receipt. (*Id.*) In his second amended complaint, Johnson alleges that Wireman told him to observe the summertime Ramadan fast instead. (Doc. 28 ¶ 27.) On December 2, 2014, defendant Kephart, Director of the DOC's Bureau of Treatment Services, wrote a memorandum recommending that the request be denied by the regional deputy secretary of corrections. (*Id.*

at 3, 6.) In support, Kephart noted that accommodating Johnson's request would require the DOC to accommodate the individual fasting preferences of all 51,000 inmates in DOC custody, that the DOC's limited resources impacted its ability to accommodate all such individual accommodation requests, and that the least restrictive means for Johnson to observe his religious beliefs would be for him to participate in the summertime Ramadan fast for which the DOC already provided accommodations to its large population of traditional Muslims. (*Id.*) Later that same day, defendant Bickell, the DOC's Deputy Secretary for the Central Region, signed the memorandum and checked a space indicating that he concurred with Kephart's recommendation. (*Id.*) On December 9, 2014, defendant Wireman sent a copy of the memorandum to Johnson. (*Id.*)

### b. December 2014 Fast: Grievance No. 523688

On or about August 18, 2014—the same day he submitted his religious accommodation request form—Johnson submitted a grievance form to officials at SCI Huntingdon, logged as Grievance No. 523688, inquiring why prison officials would not accommodate Nation of Islam adherents who desired to observe the December fast. (Defs.' Ex. 6, at 1;

*see also* Doc. 66-1, at 1.) Johnson wrote:

> I would like to know why can't the Nation of Islam fast in the month of December. That is my religious belie[f] that I fast in the month of December. The Sunni Muslim fast when Ramadan come[s] certain month[]s in the year. I see that the Jew[]s can fast to[o] at this prison[,] but when it come[s] to the Nation of Islam[,] the[re] is a problem. I know that this has been going on for a while[,] which the chaplain inform[ed] me[,] but why is it that the Sunni Muslim and the Jew[]s can fast and the Native American Indians can have their feast[,] but the Nation of Islam can[n]ot fast in the month of December[?] That is our belie[f.] We follow Elijah Muhammad.

(Defs.' Ex. 6, at 1; *see also* Doc. 66-1, at 1.) Johnson also wrote that he had "talk[ed] to [the] chaplain[,] [who] told me I could not fast[,] that the prison will not give me food to break my fast[,] but I could still fast in December without food from the prison to break my fast." (Defs.' Ex. 6, at 1; *see also* Doc. 66-1, at 1.)

On August 20, 2014, the grievance was rejected by the SCI Huntingdon grievance coordinator, Constance Green, as untimely filed. (Defs.' Ex. 6, at 2; *see also* Doc. 66-1, at 2.) Green advised that:

> You have not provided any specific dates or information to explain how your complaint is timely; therefore it is considered untimely. If you can provide information or dates to show timeliness, you may resubmit your grievance using the assigned number in accordance with DC ADM 804, Section 1.B.6.

(Defs.' Ex. 6, at 2; *see also* Doc. 66-1, at 2.)

On or about August 29, 2014, Johnson submitted a grievance form to officials at SCI Huntingdon, logged as a resubmission of Grievance No. 523688, complaining that prison officials' failure to provide him with a religious accommodation so he could observe the December fast constituted a deprivation of his free exercise rights under the First Amendment and his equal protection rights under the Fourteenth Amendment.[10] (Defs.' Ex. 6, at 3–4; *see also* Doc. 66-1, at 3–4.) Johnson also specifically requested an award of $50,000 in compensatory damages and $50,000 in punitive damages. (Defs.' Ex. 6, at 4; *see also* Doc. 66-1, at 4.) Johnson wrote:

> I am a Muslim who is a member of the Nation of Islam[,] which my First Amendment right and my Fourteenth Amendment right [to] equal protection are being violated[.] I assert as a member of the Nation of Islam who follows the teaching[]s of the Honorable Elijah Muhammad[,] I am being discriminated against and denied my religious right to fast in the month of December[,] which is the practice of my religious belief[,] that I fast during the month of December, under the Religious Land Use and Institutionalized Person Act (RLUIPA), 42 U.S.C. [§] 2000cc. I am being denied the freedom to exercise my religious right which is a[n] atypical and significant hardship[] and a burden on my

---

[10] Johnson articulated an RLUIPA claim here as well. We have addressed the dismissal of his RLUIPA claim above.

religious practice[,] which violates []RLUIPA[], as well as a violation of my Fourteenth Amendment right under the Equal Protection Clause. SCI Huntingdon administration and staff are treating myself and members of my religious belief with differential treatment than those similarly situated[,] such as the Sunni Muslims, the Jews[,] and the Native Americans[.] All of those sect[]s can fast at their prescribed times thr[ough]out the year without an issue. Yet, when I asked the chaplain on 8-29-14 about our fast being honored in December[,] he said the administration will not give us foot to break our fast[,] but I could independently fast in December without food being provided by the prison official[]s for my fast. The administration at SCI Huntingdon[—]officials[,] staff[,] []chaplains dept. staff[,] and []kitchen staff[—]all are violating my First Amendment right. For these violations of my religious rights, I seek compensatory damages of $50,000 and punitive damages of $50,000. To resolve at this level, my religious belief[s] and practices be honored and respected by SCI Huntingdon[,] and the Nation of Islam member[]s be able to fast in December[,] . . . provided with food for the breaking of our fast[,] . . . allotted the necessary time in the chow hall to eat daily[,] and provided with our breakfast meal before the fast daily.

(Defs.' Ex. 6, at 3–4; *see also* Doc. 66-1, at 3–4.) Johnson also wrote that he had "sen[t] religious accommodation request form – non-grooming to Chaplain's Dept on 8-18-14 and sent DC-135A request to Chaplain Dept on 8-22-14[,] all to no response or avail[.] Talk[ed] to [Chaplain Grove] on 8-29-14 at [Nation of Islam] service[.] No resol[ution] could be reached."

(Defs.' Ex. 6, at 3; *see also* Doc. 66-1, at 3.)

On September 3, 2014, the resubmitted grievance was rejected by Green as untimely filed. (Defs.' Ex. 6, at 5; *see also* Doc. 66-1, at 5.) Other than marking a box indicating that "[t]he grievance was not submitted within 15 working days after the events upon which claims are based," Green provided no other basis for the response. (Defs.' Ex. 6, at 5; *see also* Doc. 66-1, at 5.)

On September 7, 2014, Johnson resubmitted his August 29, 2014, grievance for a second time, along with a Form DC-135A Inmate's Request to Staff Member in which Johnson requested that the re-resubmitted grievance be considered. (Defs.' Ex. 6, at 6; *see also* Doc. 66-1, at 6.) On September 11, 2014, the re-resubmitted grievance was rejected by Green on the ground that "DC ADM 804 makes no provisions for resubmitting a rejected grievance more than once. Your next avenue is an appeal to the superintendent." (Defs.' Ex. 6, at 7; *see also* Doc. 66-1, at 7.)

Johnson appealed the rejection to the superintendent of SCI Huntingdon. The inmate appeal itself is not present in the record before us, but on October 8, 2014, Superintendent Eckard remanded the grievance, stating: "After reviewing your grievance, I must agree your

[timeliness] argument has merit; therefore, it is my decision to remand it to the grievance coordinator for assignment to a grievance officer for investigation and response." (Defs.' Ex. 6, at 8; *see also* Doc. 66-1, at 8.)

On October 14, 2014, Johnson's grievance was denied on its merits by the assigned grievance officer, defendant Houser. (Defs.' Ex. 6, at 9; *see also* Doc. 66-1, at 9.) Johnson appealed the grievance officer's determination to the superintendent.[11] (Defs.' Ex. 6, at 10–11; *see also* Doc. 66-1, at 10–11.) On November 17, 2014, Superintendent Eckard upheld the grievance officer's determination that Johnson's grievance was meritless. (Defs.' Ex. 6, at 12; *see also* Doc. 66-1, at 12.)

On or about December 1, 2014, Johnson submitted a typed appeal, prepared with the assistance of counsel, from the superintendent's decision to the DOC's Secretary's Office of Inmate Grievances & Appeals ("SOIGA"). (Defs.' Ex. 6, at 13; *see also* Doc. 66-1, at 13.) On December 18, 2014, a grievance officer at SOIGA sent Johnson an "Action Required" notice, advising that his appeal was incomplete and instructing him to submit "a legible copy of [his] *first* appeal to Facility Manager, signed &

---

[11] We note that, beginning with this document, Johnson began submitting typed documents prepared by his attorney, in consultation with Johnson. (*See* Doc. 92, at 88–89.)

dated," within 15 working days from the date of the notice. (Defs.' Ex. 6, at 14; *see also* Doc. 66-1, at 14.) Johnson submitted a typed addendum, prepared with the assistance of counsel, arguing that he had already submitted all documents, and that there was no other "appeal to the Facility Manager" to submit.[12] (Defs.' Ex. 6, at 15; *see also* Doc. 66-1, at 15.) On January 21, 2015, Johnson's grievance was dismissed at the final appeal level by Dorina Varner, chief grievance officer for the DOC. (Defs.' Ex. 6, at 16; *see also* Doc. 66-1, at 16.) In support, Varner stated: "You failed to provide a copy of your 1st appeal to the facility manager (dated 9/17/14), although this office advised you to do so. Therefore, your appeal to this office is dismissed." (Defs.' Ex. 6, at 16; *see also* Doc. 66-1, at 16.)

"To comply with the exhaustion requirement, a prisoner must *complete* the prison's administrative process." *Torrence v. Thompson*, 435 Fed. App'x 56, 59 (3d Cir. 2011) (per curiam). "[T]o properly exhaust administrative remedies prisoners must 'complete the administrative review process in accordance with the applicable procedural rules'—rules that are defined not by [§ 1997e(a)], but by the prison grievance process itself." *Jones*, 549 U.S. at 218. "A procedurally defective appeal does not

---

[12] We note that the copy in the record is undated and unsigned.

satisfy the exhaustion requirement of section 1997(e)." *Torrence*, 435 Fed. App'x at 59 (citing *Spruill*, 372 F.3d at 230). As the Third Circuit has previously noted, the Pennsylvania DOC "inmate grievance procedures— which define[] the boundaries of proper exhaustion—explicitly require an inmate to submit all required documents to SOIGA when appealing a grievance to final review." *Smith v. Sec'y of Pa. Dep't of Corr.*, 747 Fed. App'x 101, 104 (3d Cir. 2018) (per curiam). (*See* Defs.' Ex. 1, at 2-5 (DC-ADM 804 Procedures Manual § 2.B.1.i (Mar. 31, 2014)); Pl.'s Ex. 12, at 2-5 (DC-ADM 804 Procedures Manual § 2.B.1.i (Dec. 1, 2010)).)

Here, Johnson failed to submit the required documentation to SOIGA, despite an explicit request from SOIGA and an extension of time to do so. Because he failed to perfect his appeal for final review by SOIGA according to the applicable procedures, Johnson has failed to exhaust his administrative remedies with respect to Grievance No. 523688. *See Smith*, 747 Fed. App'x at 104 (affirming summary judgment for failure to perfect grievance appeal); *Spearman v. Morris*, 643 Fed. App'x 82, 85 (3d Cir. 2016) (per curiam) (same); *Basemore v. Vihlidal*, 605 Fed. App'x 105, 108–09 (3d Cir. 2015) (per curiam) (affirming dismissal for failure to perfect grievance appeals); *Torrence*, 435 Fed. App'x at 59 (dismissing

appeal as frivolous); *Jones v. Coleman*, Civil Action No. 11-701, 2013 WL 1314592, at *5–*6 (W.D. Pa. Mar. 1, 2013) (recommending summary judgment against prisoner for failure to perfect grievance appeal).

### c. December 2014 Fast: Grievance No. 543097

On or about December 16, 2014—shortly after denial of his formal request for a religious accommodation—Johnson submitted a typed grievance form, prepared with the assistance of counsel; this grievance was logged as Grievance No. 543097, and it challenged the denial of Johnson's August 2014 religious accommodation request. (Defs.' Ex. 7, at 1–3; *see also* Doc. 66-2, at 1–3.) Johnson wrote:

> I submitted a request several months ago under DC-ADM 819 for religious accommodation of a December fast. I received notification of the denial of my request. The notification is improper. The reasons given for the denial of the request in the notification indicate that this decision was made in a manner that violates my statutory rights and my constitutional rights. My religious practice of a December fast is substantially burdened by the prison's regulations, which require me to purchase my own food for a month but then forbid me to store it in my cell while also prohibiting me from removing more than one serving of fruit from the dining hall at a time. The prison's regulations make it impossible for me to observe the December fast at all. To impose such a burden, under federal law the prison must first show that it has considered all alternatives that would be less burdensome for me. The prison has not done that. The prison formerly accommodated the

December fast, but it ceased to do so arbitrarily about 2008.

The notification misquotes the federal statute. The statute says the prison must use the least restrictive means to accomplish its own interests. The notification incorrectly states that observing a Ramadan fast is a means of observing a December fast and is in fact the "least restrictive means." That is nonsensical. These are two entirely different religious practices. This forces me to engage in a religious practice that a different religious community observes, instead of my own. The notification wrongly singles out another religious practice for favorable treatment, in violation of the constitution. The notification improperly favors a practice that it attributes to the Nation of Islam. I do not adhere to the practice of Ramadan fasting that the notification ascribes to the Nation of Islam. The notification wrongly states that accommodating my religious practice would mean accommodating 51,000 people. That is an absurd exaggeration. It is obviously untrue.

The decision that is conveyed in the notification was taken without any attempt to enter into dialogue with me or my religious community about methods of accommodating the December fast such as allowing those who are observing the fast to have the latest seating at dinner, which would be after sundown in December. The December fast has been accommodated not only at SCI Huntingdon but at several other prisons for many years without undue stress on any legitimate prison interest.

The Department of Corrections did not consider my request in good faith. The notification was not made to me until well after the beginning of the December fast for 2014.

The relief I am seeking is immediate accommodation of my religious practice of fasting in December. I also seek whatever relief may be available under law for violation of my statutory and constitutional rights through the discontinuation and denial of the accommodation of the religious practice of December fasting at SCI Huntingdon since about 2008.

(Defs.' Ex. 7, at 1–2; *see also* Doc. 66-2, at 1–2.) Johnson also wrote that he had talked to Chaplain Wireman, Chaplain Grove, and Deacon McFee in connection with his request for a religious accommodation. (Defs.' Ex. 7, at 1; *see also* Doc. 66-2, at 1.) He also attached a photocopy of the December 2, 2014, memorandum in which defendant Kephart recommended denial of Johnson's religious request accommodation and defendant Bickell concurred with that recommendation. (Defs.' Ex. 7, at 3; *see also* Doc. 66-2, at 3.) On December 18, 2014, the facility grievance coordinator signed the grievance form to acknowledge its receipt. (Defs.' Ex. 7, at 1; *see also* Doc. 66-2, at 1.)

On December 24, 2014, Johnson's grievance was denied in part as frivolous and in part on its merits by the assigned grievance officer, defendant Houser. (Defs.' Ex. 7, at 4; *see also* Doc. 66-2, at 4.) Johnson submitted a typed appeal, prepared with the assistance of counsel, from the grievance officer's determination to the superintendent. (Defs.' Ex. 7,

at 5–6; *see also* Doc. 66-2, at 5–6.) On January 29, 2015, Superintendent Eckard upheld the grievance officer's determination on the ground that Johnson's grievance was without merit.[13] (Defs.' Ex. 7, at 7; *see also* Doc. 66-2, at 7.)

On or about February 21, 2015, Johnson submitted a typed appeal, prepared with the assistance of counsel, from the superintendent's decision to SOIGA. (Defs.' Ex. 7, at 8; *see also* Doc. 66-2, at 8.) On March 18, 2015, the chief grievance officer referred the grievance to the DOC's Bureau of Treatment Services for input. (Defs.' Ex. 7, at 9, 10; *see also* Doc. 66-2, at 9, 10.) On March 23, 2015, defendant Klemm responded to the referral, providing several reasons why the particular accommodation requested by Johnson was unjustified. (Defs.' Ex. 7, at 11; *see also* Doc. 66-2, at 11.) With this input, on April 1, 2015, Chief Grievance Officer Varner upheld the superintendent's determination that Johnson's grievance was meritless. (Defs.' Ex. 7, at 12; *see also* Doc. 66-2, at 12.)

Here, the defendants have focused primarily on Johnson's failure to

---

[13] The superintendent, however, did not agree with the grievance officer that Johnson's grievance was frivolous.

identify any defendants by name other than Chaplain Wireman.[14] The plaintiff has argued in response that he was not aware of this particular requirement because, other than a copy of the DOC's *Inmate Handbook, 2008–2009 Edition*—provided to him while in-processing into the state correctional system at SCI Camp Hill in November 2010—he had never been provided with notice of or access to the 2011 amendment to the DOC grievance policy that added the requirement that an initial grievance name any individuals directly involved in the underlying events.

Given the testimony and documentary evidence adduced at hearing, we find Johnson's claimed ignorance of this particular requirement—three years after it had been added to the inmate grievance procedures—to be dubious at best. Even if none of the several memoranda concerning this or other policy updates successfully reached Johnson's hands or his cell, we fully credit the grievance coordinator's testimony that updated copies of DC-ADM 804 were maintained in the prison library and on each housing unit in the prison, and these copies

---

[14] We note, however, that the initial grievance identified not only Chaplain Wireman—who was named on the grievance form itself—but also Director Kephart and Deputy Secretary Bickell—who were clearly identified on the memorandum denying Johnson's request for a religious accommodation, included as an attachment to his initial grievance.

were available to the plaintiff for reference. Moreover, we note that Johnson admitted in his own testimony that he was aware that a current version of DC-ADM 804 took precedence over the summary of grievance procedures provided in the *Inmate Handbook*.

But ultimately, the requirement that an initial grievance "identify individuals directly involved in the event" and whether Johnson was aware of it is immaterial. Another issue flagged by the defendants is the fact that Johnson's initial grievance failed to specifically request monetary relief. In each of the versions of DC-ADM 804 submitted into evidence, the policy requires that an initial grievance "must" or "should" specifically request any "compensation or other legal relief normally available from a court." (Defs.' Ex. 1, at 1-2 (DC-ADM 804 Procedures Manual § 1.A.12 (Mar. 31, 2014) ("must")); Defs.' Ex. 3, at 1-2 to -3 (DC-ADM 804 Procedures Manual § 1.A.12 (Apr. 27, 2015) ("must")); Pl.'s Ex. 12, at 1-2 (DC-ADM 804 Procedures Manual § 1.A.11 (Dec. 1, 2010) ("should")).) This same information is likewise provided in the *Inmate Handbook* Johnson has explicitly acknowledged having received in November 2010, and which he maintained in his possession after his transfer to SCI Huntingdon. (Pl.'s Ex. 4, at 12 (DOC, *Inmate Handbook*

§ II.I.5 (2008–2009 ed.)) ("If you desire compensation and/or other relief, you should request that compensation and/or relief in your initial grievance.").)[15]

As noted above, "DC-ADM804 requires an inmate who 'desires compensation or other legal relief normally available from a court' to request that specific relief in his initial grievance." *Sanders v. Beard*, Civil Action No. 3:09-CV-1384, 2013 WL 2650215, at *4 (M.D. Pa. June 13, 2013). The only relief specifically requested in Johnson's initial grievance was "immediate accommodation of my religious practice of fasting in December." (Defs.' Ex. 7, at 2; *see also* Doc. 66-2, at 2.)

---

[15] The difference between the terms "must" and "should" used in these policy statements is of no consequence under the circumstances of this case. As the Third Circuit has previously recognized, terms such as "shall," "will," or "must" are "language of an unmistakably mandatory character." *Layton v. Beyer*, 953 F.2d 839, 846 (3d Cir. 1992); *see also Spruill v. Gillis*, 372 F.3d 218, 233 (3d Cir. 2004) (use of the term "shall" indicates an "item[] that [is] mandatory"). Meanwhile, use of the term "should" indicates an "item[] that [is] required to the extent practicable." *Spruill*, 372 F.3d at 233; *see also id.* at 234 ("On this matter, the text is mandatory, or nearly so."). Here, Johnson had specifically requested an award of compensatory and punitive damages in his prior grievance, submitted in August 2014. His next grievance, prepared with the assistance of counsel and submitted in September 2015, also specifically requested "monetary relief." We are unable to conceive of any reason why it would be any less practicable to do so in this second grievance, prepared with the assistance of counsel and submitted in December 2014, and none has been offered by the plaintiff.

Johnson's vague request for "whatever relief may be available under law" (Defs.' Ex. 7, at 2; *see also* Doc. 66-2, at 2) fails to satisfy the procedural requirement that his initial grievance include a specific request for monetary compensation if such relief is desired. *See Camacho v. Beers*, Civil Action No. 16-1644, 2018 WL 6618410, at *2–*3 (W.D. Pa. Dec. 18, 2018) (finding plaintiff's statement in initial grievance "asking for relief as allowed by law" did not "request the specific relief of monetary compensation").

Because Johnson did not specifically request monetary damages in Grievance No. 543097, he procedurally defaulted and failed to exhaust available administrative remedies with respect to claims for monetary compensation, and he is barred from bringing a claim for money damages against the defendants. *See Wright v. Sauers*, 729 Fed. App'x 225, 227 (3d Cir. 2018); *Krushin v. SCI Waymart*, Civil No. 4:17-CV-1545, 2019 WL 1141691, at *3 (M.D. Pa. Jan. 29, 2019); *Camacho*, 2018 WL 6618410, at *2–*3; *Sanders*, 2013 WL 2650215, at *4.

### d. December 2015 Fast: Grievance No. 586036

On or about September 2, 2015, Johnson submitted a typed grievance form, prepared with the assistance of counsel; this grievance

was logged as Grievance No. 586036, and it challenged Chaplain Wireman's refusal to process a July 2015 religious accommodation request by Johnson. (Defs.' Ex. 8, at 1–2; *see also* Doc. 66-3, at 1–2.) Johnson wrote:

> Chaplain Wireman refuses to process my request for accommodation of my religious exercises. I submitted a "Religious Accommodation Request Form – Non-Grooming" (Attachment 4-G of DC-ADM 819) to Chaplain Wireman on July 27, 2015. In my request, I asked for accommodations for two religious exercises: December fast in December 2015, and an ongoing halal diet. Then, I waited for Chaplain Wireman to call me in for an interview, but he did not contact me.

> After the time passed when I was supposed to be interviewed, I wrote to Chaplain Wireman on a Form DC-135A on August 19, 2015. I asked him to get back to me on the request that I submitted. Chaplain Wireman wrote back to me on August 24, 2015. He said that he would not process my request. He said that I should substitute different religious practices instead of the practices I wish to observe. Specifically, Chaplain Wireman wrote: "The DOC invites NOI to fast during Ramadan and participate in feasts. No allowances are made for a December fast."

> I am being singled out for discriminatory treatment because of my religious beliefs and practices. Other prisoners have submitted the "Religious Accommodation Request Form – Non-Grooming" and those requests have been processed and, often, granted. I am being treated unfairly. Chaplain Wireman is retaliating against me for submitting a request that he does not want to deal with.

This grievance is also directed against any prison officials who instructed Chaplain Wireman to refuse to process my request in the manner provided by DC-ADM 819, or at all, even though I do not know their names at present.

The relief that I seek is to have my request reviewed and granted. I also seek whatever relief is available to me under relevant federal and state laws from a court, including but not limited to declarative, injunctive, and monetary relief.

(Defs.' Ex. 8, at 1–2; *see also* Doc. 66-3, at 1–2.)

On September 9, 2015, the grievance was rejected by grievance coordinator Green on the ground that "The issue(s) presented on the attached grievance ha[ve] been reviewed or [are] currently being reviewed and addressed in prior grievance[s] 523688 and 543097." (Defs.' Ex.8, at 3; *see also* Doc. 66-3, at 3.) Johnson did not appeal the rejection of his initial grievance to the superintendent or to SOIGA.

As we have previously noted, DC-ADM 804 provides a three-tiered grievance process. Under § 1997e(a), a prisoner is required to "take full advantage of the administrative procedures available to him" before bringing suit. *See Booth v. Churner*, 206 F.3d 289, 299 (3d Cir. 2000). Here, when Johnson's initial grievance was rejected at the first stage of the inmate grievance system, he failed to appeal that decision to the

second or third stages. At hearing, counsel for the plaintiff argued that, because the grievance coordinator had rejected the 2015 initial grievance on the ground that the same religious accommodation was previously considered and denied in 2014, any appeal to the facility manager or SOIGA would have been futile.

But it is well established that there is no futility exception to § 1997e(a)'s exhaustion requirement. *See Nyhuis*, 204 F.3d at 71; *Millbrook*, 8 F. Supp. 3d at 611; *see also Hill v. Smith*, 186 Fed. App'x 271, 274 (3d Cir. 2006) (per curiam) ("[The plaintiff's] final contention— that exhaustion should be excused because . . . inmates' grievances are regularly rejected—fails, because there is no futility exception to [§ 1997e(a)'s] exhaustion requirement."). Because Johnson failed to appeal the initial-review rejection of Grievance No. 543097 to the second or third levels of the rejection of his initial grievance to both the facility manager and SOIGA levels of review, he has procedurally defaulted and failed to exhaust his administrative remedies with respect to his claims concerning the 2015 December fast. *See Reyes v. Sobina*, 333 Fed. App'x 661, 663 (3d Cir. 2009) (per curiam) (affirming dismissal where plaintiff failed to appeal grievance rejection); *Robinson v. Prison Health Care*

*Servs., Inc.*, Civil Action No. 12-1271, 2018 WL 2426144, at *7 (E.D. Pa. May 30, 2018) (granting summary judgment where plaintiff failed to appeal grievance rejections); *Ali v. Superintendent SCI Camp Hill*, Civil No. 1:CV-14-1851, 2015 WL 59013197, at *3–*4 (M.D. Pa. Oct. 7, 2015) (dismissing claims where plaintiff failed to appeal grievance rejections); *Payne v. Pitkins*, Civil Action No. 3:10-cv-128, 2011 WL 2462493, at *2 (W.D. Pa. May 27, 2011) (recommending dismissal of claims where plaintiff did not appeal rejection of his initial grievance), *adopted by* 2011 WL 2446293 (W.D. Pa. June 17, 2011); *Jones v. Vaughn*, No. Civ.A.04-1912, 2005 WL 1971869, at *6 (E.D. Pa. Aug. 16, 2005) (granting summary judgment where plaintiff failed to appeal rejected grievance).

### e. December 2016 Fast

In late 2016, the DOC changed its policy with respect to the December fast observed by Nation of Islam adherents. Defendant Klemm allegedly issued a directive to all DOC prisons instructing them to "partially accommodate" the December fast. (Doc. 28 ¶¶ 72–75.) The directive, however, instructed the prisons to exclude a prisoner from the December fast if the prisoner had already participated in the Ramadan fast in June and July 2016. (*Id.* ¶ 74.) Johnson contacted Chaplain

Wireman and requested that he be included on the list of prisoners who would participate in the December fast in 2016, but Wireman denied Johnson's request because he had already participated in the Ramadan fast, which took place before Klemm's directive was issued. (*Id.* ¶¶ 76–79.)

Johnson never filed a grievance concerning the 2016 December fast or prison officials' refusal to permit him to participate in it. As we have already noted, there is no futility exception to § 1997e(a)'s exhaustion requirement. *See Nyhuis*, 204 F.3d at 71; *Hill*, 186 Fed. App'x at 274; *Millbrook*, 8 F. Supp. 3d at 611. Other than his meritless argument that a grievance would have been futile in light of the grievance coordinator's rejection of Johnson's 2015 initial grievance, the plaintiff has failed to adduce any evidence or articulate any reason why administrative remedies were not available to him, or why he should otherwise be excused from the exhaustion requirement.

### 3. *Findings of Fact and Conclusions of Law*

Based on the foregoing evidence and analysis, our findings of fact and conclusions of law with respect to whether the plaintiff properly exhausted available administrative remedies before bringing this action

are set forth below. *See generally* Fed. R. Civ. P. 52(a).

       *a. Findings of Fact*

1.     The plaintiff, Greg Johnson, was a state prisoner incarcerated at SCI Huntingdon, located in Huntingdon County, Pennsylvania, at all relevant times.

2.     In August 2014, while incarcerated at SCI Huntingdon, Johnson submitted a request for religious accommodation to permit him to participate in the 2014 December fast observed by adherents of his religious community, the Nation of Islam, and that request was denied by prison officials in December 2014.

3.     In July 2015, while incarcerated at SCI Huntingdon, Johnson submitted a request for religious accommodation to permit him to participate in the 2015 December fast, but the prison chaplain, defendant Wireman, refused to process this request.

4.     The DOC has established a multi-stage administrative remedy process through which an inmate may seek formal review of an issue related to any aspect of his confinement, set forth in DC-ADM 804.

5.     At the time, DC-ADM 804 provided for a three-tiered grievance process: (1) an initial review by a grievance officer; (2) an

appeal to the facility superintendent; and (3) an appeal to the statewide chief grievance officer.[16]

6.       One of the procedural requirements imposed by DC-ADM 804 at the time was the following: "If the inmate desires compensation or other legal relief normally available from a court, the inmate must request the specific relief sought in his/her initial grievance."[17]

7.       On or about August 18, 2014, Johnson submitted a grievance, logged as Grievance No. 523688, concerning the 2014 December fast.

8.       Grievance No. 523688 was denied by a grievance officer at the initial-review level on October 14, 2014.

9.       Johnson appealed the initial-review denial of Grievance No. 523688 to the facility superintendent, who upheld the denial on November 17, 2014.

10.       Johnson appealed the facility-level denial of Grievance No. 523688 to the statewide chief grievance officer, but his appeal was dismissed at the final appeal level on January 21, 2015, for failure to

---

[16] Defs.' Ex. 1, at 1-1 to -8, 2-1 to -8 (DC-ADM 804 Procedures Manual §§ 1, 2.A, 2.B (Mar. 31, 2014)).

[17] Defs.' Ex. 1, at 1-2 (DC-ADM 804 Procedures Manual § 1.A.12.d (Mar. 31, 2014)).

provide required documentation.

11. On or about December 16, 2014, Johnson submitted a grievance, logged as Grievance No. 543097, concerning the recent denial of his written request for a religious accommodation with respect to the 2014 December fast.

12. Johnson did not specifically request monetary compensation in his initial grievance for Grievance No. 543097.

13. Grievance No. 543097 was denied by a grievance officer at the initial-review level on December 24, 2014.

14. Johnson appealed the initial-review denial of Grievance No. 543097 to the facility superintendent, who upheld the denial on January 29, 2015.

15. Johnson appealed the facility-level denial of Grievance No. 543097 to the statewide chief grievance officer, who upheld the denial on April 1, 2015.

16. On or about September 2, 2015, Johnson submitted a grievance, logged as Grievance No. 586036, concerning the prison chaplain's refusal to process his July 2015 religious accommodation request concerning the upcoming 2015 December fast.

17. Grievance No. 586036 was rejected by the grievance coordinator on September 9, 2015.

18. Johnson did not appeal the rejection of Grievance No. 586036 to the facility superintendent or to the statewide chief grievance officer.

19. Johnson did not submit any grievances concerning the 2016 December fast.

20. Johnson has claimed that administrative remedies were effectively unavailable to him because he was never provided with notice the specific procedural requirements of DC-ADM 804.

22. Johnson testified that he received a copy of the DOC's *Inmate Handbook, 2008–2009 Edition*, in November 2010, which he maintained in his possession thereafter.

23. The *Inmate Handbook* summarized three-tier grievance process, including appeals to the facility superintendent and to the statewide chief grievance officer.[18]

24. The *Inmate Handbook* also explicitly stated the following: "If you desire compensation and/or other relief, you should request that

---

[18] Pl.'s Ex. 4, at 12–13 (DOC, *Inmate Handbook* § II.I (2008–2009 ed.)).

compensation and/or relief in your initial grievance."[19]

25.    Copies of DC-ADM 804 were available to Johnson for reference on his housing unit and in the facility library.

26.    Based on the demeanor of the witness and considering the record as a whole, the testimony of Constance Green is fully credible.

27.    Based on the demeanor of the witness and considering the record as a whole, the testimony of Jonathan Dudley (a/k/a Greg Johnson) is less than fully credible.

### b. Conclusions of Law

28.    Under 42 U.S.C. § 1997e(a), a prisoner-plaintiff is required to properly exhaust all available administrative remedies prior to bringing a lawsuit challenging prison conditions.

29.    Johnson failed to properly exhaust available administrative remedies with respect to his § 1983 claims against defendants Wireman, Klemm, Kephart, and Bickell.

30.    Accordingly, these defendants are entitled to judgment as a matter of law on the ground that the plaintiff failed to exhaust all

---

[19] Pl.'s Ex. 4, at 12 (DOC, *Inmate Handbook* § II.I.5 (2008–2009 ed.)).

available administrative remedies prior to bringing this action concerning prison conditions.

## IV.  CONCLUSION

For the foregoing reasons, the defendants' motion will be granted in part and denied in part, the plaintiff's claims for declaratory and injunctive relief will be dismissed as moot, his RLUIPA claim for damages against the DOC will be dismissed for lack of subject matter jurisdiction, his RFRA claim for damages against the individual defendants will be dismissed for failure to state a claim, his § 1983 claims against defendants Houser and Eckard will be dismissed as frivolous and for failure to state a claim, and judgment will be entered in favor of defendants Wireman, Klemm, Kephart, and Bickell and against the plaintiff with respect to the plaintiff's § 1983 claims against them based on the plaintiff's failure to exhaust available administrative remedies before bringing suit. All other pending motions will be denied as moot.

An appropriate Order follows.

Dated: March 27, 2019          *s/Joseph F. Saporito, Jr.*
                               JOSEPH F. SAPORITO, JR.
                               United States Magistrate Judge